**George Alarick JONES, Appellant,**

v.

**The STATE of Texas.**

**No. 72135.**

Court of Criminal Appeals of Texas,
En Banc.

Sept. 16, 1998.

Richard Anderson, Dallas, for appellant.

Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

MANSFIELD, Judge, delivered the opinion of the Court, in which McCORMICK, Presiding Judge, and KELLER, HOLLAND, and WOMACK, Judges, joined.

On March 22, 1995, a Dallas County jury found appellant, George Alarick Jones, guilty of the April 13, 1993, capital murder of Forest J. Hall.[1] See Tex. Penal Code § 19.03(a)(2). At the punishment stage of trial, the jury answered the special issues in such a manner as to require the trial court to sentence appellant to death. See Article 37.071, § 2(b), (e), & (g).[2] Direct appeal to this Court was required by law. See Article 37.071, § 2(h). Appellant now brings eight points of error in his brief to this Court. We will affirm the judgment of the trial court.[3]

In his first and second points of error, appellant argues that the trial court erred in granting, over his objection, the State's challenge of veniremember Snyder for cause. Appellant argues that the State did not carry its burden of establishing that the challenge was proper under Article 35.16. The record reflects that the State, without citing any particular provision of Article 35.16, challenged Snyder under four different theories but that the trial court granted the challenge under only one of those theories, to wit: that Snyder would, in the words of the trial court, "start an accomplice witness behind other witnesses" with respect to credibility.

To show error in the trial court's grant of the State's challenge of Snyder for cause, appellant "must demonstrate one of two things: (1) the trial judge applied the wrong legal standard in sustaining the challenge, or (2) the trial judge abused [his] discretion in applying the correct legal standard." *Vuong v. State*, 830 S.W.2d 929, 943 (Tex.Crim.App.), *cert. denied*, 506 U.S. 997,

---

1. The evidence adduced at the guilt/innocence stage of trial, viewed in the light most favorable to the jury's verdict, established that appellant, who was then 19 years old, kidnapped Hall from a shopping center parking lot in Dallas County, that appellant transported Hall in Hall's own car to a rural part of Dallas County, and that appellant then shot Hall twice in the back of the head with a .380 caliber automatic handgun. Appellant does not contest the sufficiency of the evi-

dence to support the verdict at either the guilt/innocence or punishment stages of trial.

2. All references to articles are to those in the Texas Code of Criminal Procedure.

3. The author of this opinion wishes to acknowledge the kind assistance of Womack, J., in the drafting of the discussion of points of error numbers one and two.

113 S.Ct. 595, 121 L.Ed.2d 533 (1992). As an appellate court, we must uphold the trial court's decision if it was correct under any theory of law applicable to the case, even if the trial court gave an incorrect reason for its decision. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

The first theory that the State offered to the trial court in support of its challenge of Snyder was that "[t]his woman will never, ever give an accomplice's testimony the same weight and credibility that she will [give] other testimony." Appellant responded that Snyder had "only indicated that she would be skeptical" of an accomplice witness, "[b]ut that if she believed that person, she would give credence to their testimony." As noted previously, the trial court granted the State's challenge under this theory.

The record reflects that, during voir dire, the State informed Snyder that an "accomplice" was someone "who may have participated in the crime themselves or ... were there during the commission of the crime." Subsequently, the State, defense counsel, and the trial court all asked Snyder how she would view accomplice witness testimony. Snyder stated repeatedly, without equivocation or vacillation, that she would be more skeptical of an accomplice witness than of witnesses generally because she would always wonder about the accomplice's motivation for testifying. She also stated, however, that she could accept an accomplice's testimony, explaining that "it would just come down to whether or not I believed the individual."

■ In *Hernandez v. State,* 563 S.W.2d 947, 950 (Tex.Crim.App.1978), we held that a veniremember was challengeable for cause under Article 35.16(a)(8), for having a bias or prejudice in favor of or against the defendant, if the veniremember could not "impartially judge the credibility of the witnesses." [4] In that case, the veniremember stated that she would *always* believe police officers who testified at trial. Our holding in *Hernandez,*

however, must not be interpreted to mean that a veniremember is challengeable for cause simply because he would be more *skeptical* of a certain category of witness than of witnesses generally. What we meant in *Hernandez* was that litigants are entitled to jurors who will be genuinely open-minded and persuadable, with no *extreme or absolute* positions regarding the credibility of any witness. We could not have meant that jurors must be completely impartial and free of any trace of skepticism toward any category of witness. Complete impartiality cannot be realized as long as human beings are called upon to be jurors. No person sitting as a juror can completely remove his own experiences, beliefs, and values, however hard he may try. Thus, Snyder was not challengeable for cause simply because she stated she would be more skeptical of accomplice witnesses than of witnesses generally.[5] She expressed no extreme or absolute position regarding the credibility of accomplice witnesses. In short, in granting the State's challenge for cause under the State's first theory, the trial court applied the wrong legal standard.

The State argues that Snyder was challengeable for cause under our holding in *May v. State,* 738 S.W.2d 261, 270–271 (Tex. Crim.App.), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987). The State's reliance on *May* is misplaced, however. In that capital murder case, we held that a veniremember was challengeable under Article 35.16(b)(3), for having a bias or prejudice against a phase of the law upon which the State was entitled to rely, when she stated that she would *always disregard* an accomplice witness' testimony at the punishment stage of trial and would answer the special issues in such a manner that the defendant would receive a life sentence. Thus, *May* is easily distinguishable from the case at bar.

■ The second theory that the State offered to the trial court in support of its

---

4. Article 35.16(a)(8) has since been renumbered as Article 35.16(a)(9).

5. Indeed, Snyder's position was logical, given that accomplice witness testimony is inherently

suspect. See *Gill v. State,* 873 S.W.2d 45, 48 (Tex.Crim.App.1994); *Walker v. State,* 615 S.W.2d 728, 731 (Tex.Crim.App.1981); Tex.Code Crim. Proc. art. 38.14.

challenge of Snyder was that "she is going to require [the State to] prove beyond a reasonable doubt that a person is actually going to be outside the penitentiary before she is ever going to consider [the non-prison segment of society] to be a part of 'society' [for the purposes] of [punishment] question number one." See Article 37.071, § 2(b). Appellant responded that "[a]ll that [Snyder] is requiring is [for] the State [to] meet its burden of proof."

The record reflects that, in response to a leading question from the State, Snyder stated that it would be "reasonable" for a juror to require the State to prove beyond a reasonable doubt that the defendant would actually be out of prison at a certain time before that juror would consider the non-prison population to be part of "society" for the purposes of the first punishment issue. The State now argues that Snyder's answer rendered her challengeable under Article 35.16(b)(3).

■ Before a veniremember can be properly challenged under Article 35.16(b)(3), the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views. *Chambers v. State*, 903 S.W.2d 21, 29 (Tex.Crim.App. 1995). Here, no one explained to Snyder the law regarding the term "society" as used in the first punishment issue. The State should have explained to Snyder that the term "society" was not defined by statute and that, therefore, under Article 3.01, jurors must give the term the meaning that is ordinarily acceptable in common language, regardless of what the State proves at trial. *Camacho v. State*, 864 S.W.2d 524, 536 (Tex.Crim.App. 1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994); *Rougeau v. State*, 738 S.W.2d 651, 660 (Tex.Crim.App. 1987), *cert. denied*, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988). Because the relevant law was not explained to Snyder, she was not challengeable under the State's second theory.

The third theory that the State offered to the trial court in support of its challenge of

Snyder was that she would "never consider prison to be part of 'society'" for the purposes of the first punishment issue.[6] Appellant responded that Snyder was not challengeable on the basis of her views regarding the meaning of "society" because no one had explained to her the law regarding that term.

The record reflects that, in response to a question from the trial court, Snyder stated that she would exclude the prison population from her definition of "society" when answering the first punishment issue. The State now argues that her statement rendered her challengeable under Article 35.16(b)(3). As we noted previously, however, no one ever explained to Snyder the law regarding the meaning of the term "society." Therefore, she was not challengeable under the State's third theory, either.

■ The fourth and final theory that the State offered to the trial court in support of its challenge of Snyder was that "this juror is going to impose a higher burden of proof on the State of Texas from the get-go" at both stages of trial. Appellant responded that "once they showed her what the law is, she said that she could follow the law." The trial court then expressly ruled against the State on this theory.

The record reflects that, initially, Snyder stated that she would hold the State to a standard of proof higher than beyond a reasonable doubt. However, once the legal definition of "reasonable doubt" was explained to her,[7] Snyder was unwavering in stating that she would follow the law and hold the State only to that standard at both stages of trial. On this record, therefore, we cannot say that the trial court abused its discretion in *refusing* to grant the State's challenge under its fourth theory.

■ In view of the preceding analysis, it is clear that the trial court erred in granting the State's challenge of veniremember Snyder for cause. The next question is whether the judgment should be reversed because of the error. We must first decide whether the error is constitutional or otherwise, because

---

6. Contrast this with the State's second theory.

7. See *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim.App.1991).

the standard of review for errors of constitutional dimension is different from the standard for other errors. See Tex.R.App. Proc. 44.2.[8]

▮▮▮ Constitutional provisions bear on the selection of a jury for the trial of a criminal case. The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions the accused shall have a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." The right embodied in this clause of the Sixth Amendment is one that, under the Due Process Clause of the Fourteenth Amendment, states may not deny. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). But the constitutional right to trial by an impartial jury is not violated by every error in the selection of a jury.

> Moreover, while it is true, as appellant argues, that the Constitution guarantees to an accused the right to a speedy trial by an impartial jury, it does not follow that the rejection of [allegedly] unqualified persons for insufficient cause would deprive appellant of that right; or that any useful or legitimate purpose would be served by remanding the case for a new trial before another impartial jury. It is significant in this respect, moreover, that no claim is made that the jury, as finally constituted, was biased or prejudiced; or that appellant was deprived of a trial by an impartial jury.

*Shettel v. United States*, 113 F.2d 34, 36 (D.C.Cir.1940). Only in very limited circumstances, when a juror is erroneously excused because of general opposition to the death penalty ("*Witherspoon*" error),[9] does the exclusion of a juror by an unintentional mistake amount to a constitutional violation. *United States v. Prati*, 861 F.2d 82, 87 (5th Cir. 1988). Accord, *United States v. Gonzalez–Balderas*, 11 F.3d 1218, 1222 (5th Cir.), *cert. denied*, 511 U.S. 1129, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994). Cf. *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (erroneous denial of defendant's challenge for cause which resulted in loss of peremptory challenge in capital case did not violate constitutional right to impartial jury). Although this is a capital case, the juror was not excused because of her opposition to the death penalty. There was no violation of the Sixth Amendment right.

▮▮▮ The people of Texas have the authority to provide greater protections to criminal defendants than those provided in the federal constitution. But as to trial by an impartial jury in criminal cases, they have not. Like its federal counterpart, the Bill of Rights in the Texas Constitution recognizes the right to trial by jury. "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury." Tex. Const. art. I, § 10. As we have said previously, there is no significant textual difference between the two constitutional provisions which would indicate that different standards of protection should be applied, and we can conceive of no reason why the impartial-jury requirements in the two constitutions should be different. *Marquez v. State*, 725 S.W.2d 217, 243 (Tex.Crim.App. 1987). A mere error in ruling on a challenge for cause does not violate Article 1, § 10, of the Texas Constitution.

Exclusion of jurors for impermissible reasons (such as race, sex, or ethnicity) may violate other constitutional provisions, but this case involves no such reason. The error in this case was a mistaken application of Article 35.16(b)(3). It is not of constitutional dimension.

▮▮▮ We must therefore disregard the error in granting the State's challenge for

---

8. Texas Rule of Appellate Procedure 44.2 provides in relevant part:
   (a) *Constitutional error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.
   (b) *Other errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

9. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

cause unless it affected substantial rights. See Tex.R.App. Proc. 44.2(b); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). The standard of review in our rule is substantially identical to that in Federal Rule of Criminal Procedure 52(a).[10] See Notes and Comments, Tex.R.App. Proc. 44.2 (1997). Therefore, we first shall consider how the federal courts treat such errors.

It was established early in the federal courts that the incorrect exclusion of a juror did not require reversal of a judgment. Chief Justice Story, sitting as a circuit judge, denied a new trial to a defendant who claimed that Quaker jurors had been excused in error. The Chief Justice reasoned, "Even if a juror had been set aside by the court, for an insufficient cause, I do not know that it is a matter of error, if the trial has been by a jury duly sworn and impaneled, and above all exceptions. Neither the prisoner nor the government in such a case have suffered an injury." *United States v. Cornell,* 25 F.Cas. 650, 656 (D.R.I.1820) (No. 14,868).

The full Court adopted the same reasoning in *Northern Pacific R.R. Co. v. Herbert,* 116 U.S. 642, 6 S.Ct. 590, 29 L.Ed. 755 (1886), in which a juror had been challenged for cause by Plaintiff Herbert and excused by the trial court. The Supreme Court held that, even if there was no cause to excuse the juror, the ruling "did not prejudice the [defendant] company. A competent and unbiased juror was selected and sworn, and the company had, therefore, a trial by an impartial jury, which was all it could demand." 116 U.S. at 646, 6 S.Ct. 590.

The same holding applies in the trial of criminal cases in federal courts. See, *e.g., United States v. Gonzalez–Balderas,* 11 F.3d 1218, 1222 (5th Cir.), *cert. denied,* 511 U.S. 1129, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994); *United States v. Prati,* 861 F.2d 82, 87 (5th Cir.1988); *Shettel v. United States,* 113 F.2d 34, 36 (D.C.Cir.1940).

When we look to the jurisprudence of other jurisdictions, we find only decisions which employ the same principle as that of the federal courts.[11] See *State v. Walden,* 183 Ariz. 595, 905 P.2d 974, 988 (Ariz.1995), *cert. denied,* 517 U.S. 1146, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996); *People v. Holt,* 15 Cal.4th 619, 63 Cal.Rptr.2d 782, 937 P.2d 213 (Cal.1997); *Wheeler v. People,* 63 Colo. 209, 165 P. 257, 258 (Colo.1917); *Wells v. State,* 261 Ga. 282, 404 S.E.2d 106, 107 (Ga.1991); *State v. Clark,* 47 Idaho 750, 278 P. 776, 777–78 (Idaho 1929); *State v. Kendall,* 200 Iowa 483, 203 N.W. 806, 807 (Iowa 1925); *Hunt v. State,* 321 Md. 387, 583 A.2d 218, 234 (Md. 1990); *State v. Hurst,* 153 Minn. 525, 193 N.W. 680, 682 (Minn.1922); *State v. Hill,* 827 S.W.2d 196, 199 (Mo.1992); *State v. Huffman,* 89 Mont. 194, 296 P. 789, 790 (Mont. 1931); *Bufford v. State,* 148 Neb. 38, 26 N.W.2d 383, 386 (Neb.1947); *State v. Martinez,* 34 N.M. 112, 278 P. 210, 210–11 (N.M. 1929); *State v. Carson,* 296 N.C. 31, 249 S.E.2d 417, 423 (N.C.1978); *State v. Wells,* 114 S.C. 151, 103 S.E. 515, 516 (S.C.1920); *State v. Larkin,* 130 Wash. 531, 228 P. 289, 289 (Wash.1924).

The law in Texas for civil cases is like that of the federal courts and the courts of the other states. "It has long been the established rule in this state that even though the challenge for cause was improperly sustained, no reversible error is presented unless appellant can show he was denied a trial by a fair and impartial jury." *City of Hawkins v. E.B. Germany & Sons,* 425 S.W.2d 23, 26 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). Accord, R. McDonald, 3 *Texas Civil Practice in District and County Courts* § 11.11 (1983 rev.). The rule was established more than a century ago. See *Couts v. Neer,* 70 Tex. 468, 9 S.W. 40 (1888).

For at least sixty-five years, this Court employed an essentially similar doctrine when it confronted a claim that a State's challenge for cause had been erroneously granted. "Whether the court correctly per-

---

10. "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed. R.Crim. Proc. 52(a).

11. One state's legislature enacted a contrary rule by statute to abolish the effect of its court's jurisprudence. Compare La.Code Crim. Proc. art. 800 with, e.g., *State v. Claire,* 41 La. Ann. 1067, 6 So. 806, 806 (1889) (it is established that appellant cannot complain of court's excusing juror).

mitted the state to challenge the jurors for this cause, it is unnecessary for us to decide, because the bills nowhere and in no way show that any objectionable juror was thereby forced upon the appellant. So that, even if the court erred in such a matter, no injury whatever is shown to appellant, and he has no cause to complain because thereof." *Lawson v. State,* 67 Tex.Crim. 24, 148 S.W. 587, 588 (Tex.Crim.App.1912). Accord, *Holmes v. State,* 70 Tex.Crim. 423, 157 S.W. 487 (Tex. Crim.App.1913).[12] We followed this rule until we delivered our opinion on rehearing in *Payton v. State,* 572 S.W.2d 677 (Tex.Crim. App.1978), which said:

> What is the harmful effect upon the accused of an erroneous exclusion sua sponte or on challenge for cause by the State? If the prospective juror is not subject to the alleged disqualification, and if the defendant objects to the trial court's erroneous exclusion of the venireman, then the effect, from the perspective of the defendant, is the same as if the State had been given an extra peremptory challenge. On this reasoning, harm would be shown if the State exercised all its peremptory challenges on other veniremen. This test for harm is supported by language in *Pearce v. State,* Tex.Cr.App., 513 S.W.2d 539, where in addressing a challenge to the trial court's sua sponte dismissal of a venireman this Court wrote:

> "There is no showing that the State exhausted its peremptory challenges and that the prospective juror, claimed to have been improperly excused, would have served except for the court's action."

> In *Culley v. State,* Tex.Cr.App, 505 S.W.2d 567, on another challenge to the erroneous exclusion of a prospective juror, the court wrote:

> "There is no showing that appellant did not have a fair and impartial trial, *nor that*

*the State had exhausted its peremptory challenges, one of which might have been used to eliminate the prospective juror."* (Emphasis added.)

> We find this test expressed in *Pearce* and *Culley* to be appropriate to the issue before us.

*Payton v. State,* 572 S.W.2d at 680 (footnote omitted).

The statement that there was a "test expressed in *Pearce* and *Culley*" was not justified. Neither of those cases employed, or purported to employ, as a test the fact that the State had not used all its peremptory challenges. The authors simply raised as a point of fact the ability of the State to have excluded the challenged juror. But that ability would not have affected any substantial right of the defendant, because a defendant has no right that any particular individual serve on the jury. The defendant's only substantial right is that the jurors who do serve be qualified. The defendant's rights go to those who serve, not to those who are excused. Before *Payton,* we recognized that principle, as do the courts of all the other jurisdictions.

A second flaw in the reasoning of *Payton* is the statement that the effect of the erroneous exclusion "is the same as if the State had been given an extra peremptory challenge." *Ibid.* This assertion is not correct. Challenges for cause go to legal qualifications of jurors, whereas peremptory challenges are used to eliminate jurors who are thought (or felt) to be undesirable on a partisan evaluation. A juror's disqualification is not related to the juror's desirability. It is especially wrong to equate the State's challenge for cause to a peremptory challenge, because the State has the right to challenge disqualified jurors even when their disqualifications might seem to make them favor the State.

---

**12.** The ancestor of this Court, the Court of Appeals, had first decided that there would be reversal for every error without consideration of its effect. "It has been settled by this court that the rulings of the court in organizing a jury are not revisable unless they infringe the law or prejudice the accused. In this case we think the action of the court in setting aside the juror upon the challenge of the district attorney for cause was an infringement upon the law, though it may

not have operated to the prejudice of the defendant; and for this error the judgment is reversed and the cause remanded." *Wade v. State,* 12 Tex.App. 358, 370 (1882) (citations omitted). This early doctrine was abandoned long ago. It is contrary to our policy that almost all errors are subject to harmless-error review. See *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App. 1997).

See *Morrow v. State*, 910 S.W.2d 471 (Tex. Crim.App.1995).

By the standards of *stare decisis*, analysis of precedent, and logic, the holding of *Payton* is unsupportable. It is also contrary to a policy which we think courts should follow: the liberal granting of challenges for cause. The venire comprises so many jurors who are clearly qualified that it is unnecessary to err by denying a challenge for cause on a close question.

■■■ We overrule the holding of *Payton v. State* that a conviction will be reversed when a juror was erroneously excused and the State used all its peremptory challenges. We return to our previous rule, that the erroneous excusing of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury. There being no such showing in this case, points of error one and two are overruled.

In points of error numbers three, four, and five, appellant argues that the trial court erred in "denying [his] requests to voir dire [the venire] and present evidence [at trial] in regard to parole law and for the trial court to charge the jury thereon." Appellant argues further that the trial court's denial of his requests violated his rights under the Sixth Amendment (right to counsel), Eighth Amendment (ban on cruel and unusual punishment), and the Fourteenth Amendment (rights to equal protection of the laws and due process of law).

We have addressed such claims before and have held adversely to appellant. See *Rhoades v. State*, 934 S.W.2d 113, 118–119 (Tex.Crim.App.1996) (plurality op.); *McFarland v. State*, 928 S.W.2d 482, 505 (Tex.Crim. App.1996); *Lawton v. State*, 913 S.W.2d 542, 556 (Tex.Crim.App.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996); *Sonnier v. State*, 913 S.W.2d 511, 518, 521 (Tex.Crim.App.1995); *Broxton v. State*, 909 S.W.2d 912, 918–919 (Tex.Crim. App.1995); *Smith v. State*, 898 S.W.2d 838, 846–848 (Tex.Crim.App.) (plurality op.), *cert. denied*, 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995); *Willingham v. State*, 897

S.W.2d 351, 359 (Tex.Crim.App.1995). We overrule points of error numbers three, four, and five.

■■■ In his sixth point of error, appellant complains of the admission in evidence, at the punishment stage, of State's exhibit 37, which was a photograph of Kindra Buckner's face taken after her body was found on September 21, 1993.[13] Appellant concedes that the photograph was not without relevance, "because … it depicts the damage to the victim's head." He "strenuously contends, however, that any such relevance [was] substantially outweighed by the prejudicial effect of the picture." See Tex.R.Crim. Evid. 403. Appellant insists that the photograph was too gruesome to be admissible.

The record does not contain the photograph in question, but, in its brief, the State describes the photograph as being an eight-inch by twelve-inch color photograph of Buckner's face taken at the scene of the extraneous offense. According to the State, "[a] large hole appears in the face, [and] the teeth are blown outward to one side." The briefs contain no other information about the photograph.

■■■ Once a defendant objects to photographic evidence on the basis of Rule 403, the trial court must weigh its probative value against its potential for *unfair* prejudice. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). An appellate court reviewing the trial court's decision may reverse it only for an abuse of discretion, i.e., only when the trial court's decision was outside the zone of reasonable disagreement. *Ibid.*

■■■ On the record before us, we can discern no abuse of discretion on the part of the trial court in admitting State's exhibit 37. The photograph in question apparently depicted no more than the gruesome nature of the injuries inflicted by appellant and Martin. Although a crime scene photograph may be gruesome, that fact alone will rarely render the photograph *necessarily* inadmissible under Rule 403. *Id.* at 430; *Long v. State*, 823

---

**13.** See footnote 11 and accompanying text.

S.W.2d 259, 272–273 (Tex.Crim.App.1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). We overrule point of error number six.

■ In point of error number seven, appellant contends that the trial court erred when it "denied [his] request for a Rule 403 balancing test" with respect to State's exhibit 37. Appellant argues that the trial court should have articulated the factors it considered when overruling his Rule 403 objection, so as to facilitate appellate review. See *Montgomery v. State*, 810 S.W.2d 372, 393 n. 4 (Tex.Crim.App.1990) (opinion on reh'g).

The record reflects that the trial court did not explicitly state into the record its mental process in overruling appellant's Rule 403 objection to State's exhibit 37. The record also reflects, however, that appellant did not ask the trial court to do so and did not object when the trial court failed to do so. Any error, therefore, has not been preserved for appellate review. Tex.R.App. Proc. 33.1. We overrule point of error number seven.

■ In his eighth and final point of error, appellant argues that the trial court erred in overruling his objection to the charge at punishment. Appellant orally objected to the charge "for its failure to give an instruction to the jury on the accomplice witness testimony [of Jamoan Martin] such as the one given in the charge on guilt or innocence." See Article 38.14. The record reflects that, during the punishment stage, Martin testified about an extraneous murder committed by appellant.

Appellant has shown no error. The accomplice witness rule embodied in Article 38.14 does not apply to testimony offered to prove extraneous offenses at the punishment stage of a capital murder trial. *Farris v. State*, 819 S.W.2d 490, 507 (Tex.Crim.App. 1990), *cert. denied*, 503 U.S. 911, 112 S.Ct.

1278, 117 L.Ed.2d 504 (1992). We overrule point of error number eight.

Having found no reversible error, we affirm the judgment of the trial court.

PRICE, J., concurred in the judgment of the Court.

BAIRD and MEYERS, JJ., delivered dissenting opinions.

OVERSTREET, J., dissented without a written opinion.

BAIRD, Judge, dissenting.

Direct and controlling precedent from this Court mandates reversal when a trial judge erroneously grants a State's challenge for cause in a capital case. *Richardson v. State*, 744 S.W.2d 65 (Tex.Cr.App.1987); and, *Bell v. State*, 724 S.W.2d 780 (Tex.Cr.App.1986). However, the majority ignores this clear mandate and, in an act of blatant result-oriented jurisprudence, contorts Tex.R.App. P. § 44.2 to hold implicitly that there is no constitutional right to an impartial jury and to hold explicitly that a criminal defendant does not have a substantial right to a jury selected pursuant to the legislative scheme prescribed by Tex.Code Crim. Proc. Ann. chapter 35.[1] Part I of this opinion discusses why the error herein was constitutional and Part II offers an alternative discussion of why a defendant has a substantial right to a jury selected pursuant to the scheme established by the Legislature.

I.

A.

The most valuable right guaranteed by our Constitution is the right to trial by an impartial jury. U.S. Const. amend. VI. The value of this right depends upon the impartiality of the jury. Juror qualification is the province of the Legislature. Tex. Const. art. XVI, § 19.[2] To discharge this constitutional man-

---

1. Tex.R.App. P. 44.2, Reversible Error in Criminal Cases

   (a) *Constitutional error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the

   error did not contribute to the conviction or punishment.
   (b) *Other errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

2. Article XVI, § 19 of the Texas Constitution provides: "The Legislature shall prescribe by law the qualifications of grand and petit jurors; pro-

date, the Legislature has enacted legislation prescribing juror qualifications and providing challenges for cause and peremptory strikes. *See generally*, Tex.Code Crim. Proc. Ann. Chapter 35. A jury selected pursuant to this legislative scheme constitutes an impartial jury under the Sixth Amendment.

However, this constitutionally mandated scheme was breached when the trial judge granted the State's challenge for cause to veniremember Snyder. Because the obvious purpose of the legislative scheme is to ensure an impartial jury, a Sixth Amendment right, the harm analysis for an error which results in a breach of the scheme must be conducted under the constitutional standard of Tex. R.App. P. 44.2(a).

### B.

Additionally, by subverting Tex.Code Crim. Proc. Ann. art. 35.16(b)(3), the trial judge violated appellant's due process rights as mandated by the Fourteenth Amendment to the United States Constitution and appellant's due course of law right required by Article 1 § 19 of the Texas Constitution. Due process is the most comprehensive and least specific of the liberties protected by the Constitutions. *See Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). It is based on fundamental fairness and brings to the individual States the requirement that those States respect beliefs that are "implicit in the concept of ordered liberty." *See Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). The instant case is a capital case; a heightened need for reliability in all processes is required because of the qualitative difference

between death and all other punishments. *See Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). With this heightened need for reliability, the Fourteenth Amendment Due Process issue raised by a trial judged errantly granting a State's challenge for cause in a capital case must be examined.

The United States Supreme Court has declared, in criminal cases, "certainly one of the basic purposes of the Due Process Clause has always been to protect a person against having the Government impose burdens upon him except in accordance with the valid laws of the land." *Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). The Fifth Circuit has recognized that "public officials violate substantive due process rights if they act arbitrarily or capriciously." *Fowler v. Smith,* 68 F.3d 124 (5th Cir.1995).[3]

The Texas legislature has specifically delineated the requirements for a valid challenge for cause. The trial judge, in the instant case, violated this legislative mandate in granting the State's challenge for cause to veniremember Snyder. By failing to follow the non-discretionary legislative mandate in accepting challenges for cause, the trial court violated due process.[4] A trial court may not ignore a non-discretionary law in a critical setting like jury selection for a capital murder trial and still comport with the heightened expectation of fundamental fairness required by the Due Process Clause of the Fourteenth Amendment and Article 1 § 19 of the Texas Constitution.[5]

### C.

Having determined the error is of a constitutional magnitude, a harm analysis review

---

vided that neither the right nor the duty to serve on grand and petit juries shall be denied or abridged by reason of sex."

3. This case deals involves the wrongful discharge of a public employee and is not offered as direct criminal precedent, only to show this concept is a recognized part of due process.

4. This error meets the fundamental fairness aspect of the Fourteenth Amendment because any error in creating the jury encompasses each moment that jury hears evidence or deliberates. Error in composing the jury infects the structure

of the trial by exposing all procedure and evidence to an incorrectly selected jury.

5. The majority recognizes the issue as 'did this error deny the defendant a Sixth Amendment right to trial by an impartial jury?' The majority answers negatively and moves on while ignoring the Fourteenth Amendment aspects of the question. The majority also relies on *U.S. v. Prati,* 861 F.2d 82 (5th Cir.1988) in answering the 6th Amendment question. *Ante* at 391. *Prati* is not applicable because it is a non-capital case that uses a harmless-error analysis that the Court notes is not to be used in capital cases. *Prati* at 87, footnote 6.

under Tex.R.App. P. § 44.2(a) requires a determination "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." I take guidance in determining the applicability of harmless error review from *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Although the instant case and *Holloway* revolve around different issues, the same principle of analysis applies. In *Holloway*, the Supreme Court stated:

> ... In the normal case where a harmless-error rule is applied, the error occurs at trial and its scope is readily identifiable. Accordingly, the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury.... But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing.... It may be possible in some cases to identify from the record the prejudices resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation. (emphasis in the original)( internal citations omitted).

*Id.*, 435 U.S. at 491, 98 S.Ct. at 1182.

This Court held similarly in *Warmowski v. State*, 853 S.W.2d 575, 578 (Tex.Cr.App.1993):

> The point is well taken that if the nature of an error is such that the record will not provide a basis for estimating its contribution to conviction or punishment, it does

not matter whether we declare the error subject to a harm analysis or not—the result will invariably be the same. As beneficiary of the error, the State has the burden to demonstrate harmlessness. *Arnold v. State*, 786 S.W.2d 295, at 298 (Tex. Cr.App.1990). On a record from which the likelihood of harm cannot meaningfully be estimated, the State will be unable to satisfy its burden.

This Court cannot hold the instant error was harmless without engaging in "unguided speculation." No judge on this Court can produce a clear and substantiated view of how venireperson Snyder would have assessed the evidence or voted on the punishment issues in appellant's capital trial.[6] The lack of opportunity to assess harm arising from this error is inherent in the error itself; no one can say with assurance what might have happened had veniremember Snyder not been improperly excused. This error is an error of constitutional magnitude, that involves the framework of the trial and defies harmless error analysis.[7] The law requires the conviction be reversed and the case remanded to the trial court.

## II.

### A.

The majority declares this error is not "of constitutional dimension," and attempts to perform an analysis of this error under Tex. R.App. P. 44.2(b). *Ante* at 391. They begin their analysis by drawing a parallel between Tex.R.App. P. 44.2(b) and the Federal Rules of Criminal Procedure 52(a). *Ante* at 392. The majority attempts to analyze pertinent federal and state law and its applicability to the case *sub judice*. *Ante* at 392. The findings of other jurisdictions' criminal law are reinforced by looking to Texas civil law regarding the question of the instant case. *Ante* at 392. The majority ends by incor-

---

6. Here I draw attention to the statutory requirement of unanimity before the death penalty can be imposed. Our law requires that all twelve jurors answer the special issues in favor of death. We *cannot assume* because twelve others answered in favor of death that Snyder too would have answered as such.

7. See *Twine v. State*, 970 S.W.2d. 18, (Tex.Cr. App.1998)(BAIRD, J., dissenting), for another discussion of why harmless-error analysis cannot be undertaken in reference to an error whose consequence is not captured by the record. In *Twine*, this court attempted a harm analysis based on the trial judge's denying defense the opportunity to make a timely opening statement.

rectly referring to *Lawson v. State,* 67 Tex. Cr. 24, 148 S.W. 587 (1912),[8] and to *Payton v, State,* 572 S.W.2d 677 (Tex.Cr.App.1978). *Ante* at 393.

Neither *Lawson,* nor *Payton,* have bearing on the instant issue. *Lawson* is an ancient case from 1912 that has been overruled and *Payton,* decided in 1978, gives a rule for non-capital cases that does not apply to capital cases.[9] By 1986, this court had adopted the following rule in capital cases: In capital murder cases, if the trial court improperly sustains a State's challenge for cause and excludes a qualified juror, over a defendant's objection, reversible error arises regardless of whether the State has exhausted its per-emptory challenges. This is because per-emptory strikes are exercised after each pro-spective juror is questioned, under Tex.Code Crim. Proc. Ann. art. 35.13, as opposed to after the entire panel is questioned in a non-capital case. *Grijalva v. State,* 614 S.W.2d 420 (Tex.Cr.App.1981). *See also Turner v. State,* 635 S.W.2d 734 (Tex.Cr.App.1982); and, *Bell v. State,* 724 S.W.2d 780, 795 (Tex. Cr.App.1986). A clear and concise reasoning for this holding can be found in *Richardson v. State,* 744 S.W.2d 65, 69–70 (Tex.Cr.App. 1987):

> In capital cases, however, it is ordinarily immaterial that the State had strikes re-maining at the end of the voir dire exami-nation. If the trial court erroneously sus-tains a State's challenge for cause over defense objection during individual voir dire in a capital case, this has the immedi-ate effect of giving the State an additional peremptory strike. *Grijalva v. State,* 614 S.W.2d 420 (Tex.Cr.App.1981). As stated in *Grijalva,* supra at 424:
>> "The manner of exercising peremptory challenges is explicitly differentiated in Arts. 35.13 and 35.25, V.A.C.C.P. The procedure followed in *Chambers [v. State,* 568 S.W.2d 313 (Tex.Cr.App. 1978) ] and this case is stated in Art.

35.13, supra: 'A juror in a capital case in which the state has made it known it will seek the death penalty, held to be quali-fied, shall be passed for acceptance or challenge first to the state and then to the defendant. Challenges to jurors are either peremptory or for cause.'" On the other hand, in non-capital cases, such as those upon which *Chambers* re-lied, the procedure is quite different, as provided in Art. 35.25, supra:

> "'In non-capital cases and in capital cases in which the State's attorney has announced that he will not qualify the jury for, or seek the death penalty, the party desiring to challenge any juror peremptorily shall strike the name of such juror from the list furnished him by the clerk.'"

To allow the State to render harmless the improper challenge for cause and excu-sal of a venire member by the simple expedient of not using all of the State's peremptory challenges would be, as stated in *Grijalva,* supra at 424–425:

> ... corruption of the peremptory strike practice that violates the terms of Art. 35.13, supra, and gives an unfair advan-tage to the State in the jury selection process.

First, to allow the State to exercise its peremptory challenges in a capital case ·after conclusion of the voir dire examina-tion gives it the benefit of making its judg-ments with a perspective of the entire panel, a perspective that is not given the defendant.

Second, giving such a privilege to the State allows it to withhold its strikes until after the defendant has exercised his strikes, even though Art. 35.13, supra, ex-plicitly states that the qualified venire man shall be passed first to the state and then to the defendant. The statute would give the benefit to the defendant in instances

---

**8.** *Lawson* has never been cited by any court as authority.

**9.** Interestingly, the majority refers to *United States v. Cornell* as guiding established precedent for their holding. *Ante* at 392. *Cornell* is a pre-cursor to *Witherspoon/Witt* error, and therefore,

totally inapplicable to the instant case. Chief Justice Story's rationale in *Cornell* for excluding the prospective Quaker venire members (because "Quakers entertain peculiar opinions on the sub-ject of capital punishment,") would certainly be unacceptable today under the law. *Id.,* 25 F.Cas. at 655–56.

where both sides might desire to strike the same venire man. Allowing the State to wait until the end of the selection process would transfer that benefit to the State.

Third, to allow retrospective exercise of peremptory challenges *on appeal* gives the State even greater advantages. When used on appeal the State effectively postpones exercise of its strikes until error has been found, and then with the benefit of the ruling of this Court as its guide the State can maximize the accuracy of the strikes not used at trial. In actuality this Court not only counsels the State, but actually exercises the strike for the State. In effect a peremptory strike against a prospective juror is transformed into a peremptory strike against a ground of error. (Emphasis in original).

The majority provides no explanation, whatsoever, why the above reasoning does not apply to appellant today.

## B.

Because they were decided before the promulgation of Rule 44.2, neither *Bell*, supra, nor *Richardson*, supra, mention whether a criminal defendant has a substantial right to a jury selected pursuant to the legislative scheme prescribed Tex.Code Crim. Proc. Ann. chapter 35. But the question clearly answers itself. Certainly, all criminal defendants have a statutory right to a jury empaneled by the scheme prescribed by the Code of Criminal Procedure. To hold otherwise is to judicially repeal and wholly circumvent the legislative enactments that prescribe challenges for cause and the jury selection process in capital trials.

Moreover, both *Bell*, and *Richardson*, rely on *Grijalva v. State*, 614 S.W.2d 420 (Tex.Cr. App.1981), et. al., to declare that in a capital case, a trial judge errantly sustaining a State's challenge for cause commits reversible error. By following stare decisis and reversing capital cases which contain this error, this Court has impliedly recognized that an accused has a substantial right in the trial judge exclusively sustaining challenges for cause proscribed by statute. If this substantial right did not exist, there would be no reason for the *Bell/Richardson* rule.

By standards of stare decisis, analysis of precedent, and logic, this court should not ignore its previous decisions and fail to hold that an accused has a substantial right in the trial court following legislative mandate during the jury selection process. To refuse to find such a substantial right would circumvent the legislative act that prescribed challenges for cause and jury selection process in capital trials.

## C.

Moreover, the majority's interpretation of Rule 44.2(b) violates our rule making authority. The Legislature has specifically *prohibited* this Court from such actions by enacting the following statute:

> (a) The court of criminal appeals is granted rulemaking power to promulgate rules of posttrial, appellate, and review procedure in criminal cases *except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant.*

Tex. Gov't Code Ann. § 22.108(a).

In *Flowers v. State*, 935 S.W.2d 131 (Tex. Cr.App.1996), this Court held that a substantial right, the right to appeal an involuntary plea, could not be barred by a new rule of appellate procedure. The same reasoning should be applied today; prior to today's majority opinion, capital defendants had a substantial right to appeal an error committed by the trial judge in errantly granting a challenge for cause by the State and to obtain a reversal of their convictions. The new rule, 44.2, should not be interpreted to deny a defendant reversal of his conviction. Such an interpretation abridges the defendant's rights and thereby, violates our rule making authority.

## D.

A remaining problem with today's opinion is requiring an accused to show that a partial jury heard his case before this Court will reverse for error in a trial judge improperly sustaining a State's challenge for cause. This he can not do.[10]

10. An exhaustive search of this court's published cases fails to identify a single instance of a case

Texas Rules of Criminal Evidence § 606(b) [now combined with the Texas Rules of Civil Evidence and renamed Tex. Rules of Evidence] bars jurors from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict or indictment or concerning his mental processes in connection therewith . . .".[11] No juror can testify regarding a bias or partiality affecting deliberations. No bias or partiality is revealed by jurors passively absorbing evidence as it is offered in the courtroom. A jury, once assembled, is allowed no opportunity to reveal any partiality. An accused can neither impeach a jury for partiality after the verdict has been delivered nor can he approach jurors after voir dire and before the trial has concluded.

An accused has no power to seek redress of this error once it occurs. Once voir dire has ended, the accused can not obtain information necessary to submit an allegation to a reviewing court that he was not tried by an impartial jury. Today's result-oriented holding sets a crippling and impossible standard for reviewing a trial judge's error in sustaining a State's challenge for cause in a capital case.

### CONCLUSION

The effect of the majority opinion is to permit the State to request and the trial judges to grant unfounded challenges for cause thereby trampling the defendant's Constitutional rights to an impartial jury, due process of law and due course of law, and denying the defendant his substantial right to appeal and receive a reversal upon a breach of the legislative scheme for jury selection.

For all of the reasons stated above, I dissent.

MEYERS, Judge, dissenting.

I again find myself unenlightened by a majority opinion of this Court. Effective September 1, 1997, the Court promulgated a new rule for assessing harm arising from non-constitutional trial error. TEX.R.APP. PROC. 44.2(b). It is now over a year past its inception and I have no better understanding of how to apply this rule than when it was promulgated.

### I.

Texas Rule of Appellate Procedure 44.2(b), provides in part that as to non-constitutional error, "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." The first case to apply this portion of the new rule was *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim. App.1997). There, the Court said "[a] substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict[,]" citing *Kotteakos* v. U.S., 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The Court concluded, in light of the overwhelming evidence of future dangerousness that was properly admitted, any error in admitting certain other evidence "did not have a substantial or injurious influence on the jury's decision." *King*, 953 S.W.2d at 273. More recently, in *Johnson v. State*, 967 S.W.2d 410 (Tex.Crim. App.1998), the Court concluded there was harm in the admission of certain evidence. We stated the test for assessing harm for nonconstitutional error: "[a] criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect." *Id.* at 417.

And so it would seem that the Court had established the test under 44.2(b) as whether we can say with "fair assurance" that the error "did not influence the jury or had but a slight effect." But this analysis does not

---

being reversed due to a partial jury. There have been numerous instances of unqualified or disqualified jurors hearing cases and causing reversals, but not a single case has hinged upon a partial jury as the majority now requires for reversal. *Ante* at 394.

11. For an excellent explanation of the utility and necessity of this bar, see *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); or, *Buentello v. State*, 826 S.W.2d 610 (Tex.Cr.App.1992).

appear in the majority opinion today. Today, the majority's conclusion that the error is harmless is based in part on "how the federal courts" and other jurisdictions have "treated such errors." *Majority opinion* at 391–392. A reading of these cases fails to reveal the applicable or controlling rule for assessing harm. Further, it is not even clear from some of these cases whether the question was one of harm or one of alleged constitutional error. For instance, in *United States v. Prati*, 861 F.2d 82, 87 (5th Cir. 1988), the Court phrased the issue presented as whether the defendant's conviction "should be reversed because the trial judge erred in granting, over the defendant's objection, the government's challenge for cause of a prospective juror from the venire." In concluding "this is not a ground for reversing the defendant's convictions[,]" the Fifth Circuit relied on *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). There, the high Court addressed whether the erroneous grant of a State's challenge for cause violated the petitioner's "Sixth and Fourteenth Amendment right to an impartial jury, and his Fourteenth Amendment right to due process." *Id.* at 2277, 108 S.Ct. 2273. This is far from the question presented in this case which already presumes we are *not* dealing with constitutional error.[1]

Which leads to the next analytical problem in the majority's opinion. The Court's conclusion that the error is harmless is also based upon reasoning that no "substantial right" of the defendant has been affected:

> [T]he ability of the State to have excluded the challenged juror ... would not have affected any substantial right of the defendant, because a defendant has no right that any particular individual serve on the jury. The defendant's only substantial right is that the jurors who do serve be qualified. The defendant's rights go to those who serve, not to those who are excused.

*Majority opinion* at 393. There are two problems with this. While on its face subsection (b) appears to be concerned with determining what a defendant's "substantial rights" are, in *King* and *Johnson* the Court couched the inquiry in terms of influence rather than rights. A larger problem is that the Court's conclusion that a "substantial right" was not violated sounds of a constitutional analysis:

> [A] defendant has no right that any particular individual serve on the jury. The defendant's only substantial right is that the jurors who do serve be qualified. The defendant's rights go to those who serve, not to those who are excused.

*Majority opinion* at 393. By saying there is no harm here because there is no showing the defendant did not get a fair and impartial jury, the Court renders a subsection (b) error—which pertains by definition to only non-constitutional error—harmless because it does not involve subsection (a) error, a constitutional violation!

## II.

As discussed above, in *King*, we said the question under subsection (b) is whether we could say with fair assurance the error did not have "a substantial and injurious effect or influence in determining the jury's verdict." This test is derived from *Kotteakos*, supra. Following is the entire discussion from which that language appears:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The

1. Indeed, part of the problem in structuring Rule 44.2 as dependent upon whether the error is constitutional or non-constitutional is that virtually all statutes have some kind of constitutional basis. For example, while a defendant does not have a constitutional right to a certain number of peremptory strikes, the jury selection procedures provided for in the Code of Criminal Procedure are designed to achieve an end consistent with ensuring a defendant his constitutional right to a fair and impartial jury.

inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos,* 328 U.S. at 764–65, 66 S.Ct. 1239 (citations omitted). In recent opinions discussing *Kotteakos,* the Supreme Court has not articulated the level of confidence as "fair assurance," but rather has emphasized the notion of "grave doubt" as lying at the heart of the standard articulated there. *E.g., O'Neal v. McAninch,* 513 U.S. 432, 115 S.Ct. 992, 995–98, 130 L.Ed.2d 947 (1995)(discussing at length "grave doubt" standard established in *Kotteakos* ); *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986)(quoting only "grave doubt" portion of *Kotteakos* analysis).

Viewing influence in terms of grave doubt makes the most sense in the context of subsection (b) of our new rule since it is easily contrasted with subsection (a), which also turns on the level of doubt. Thus, under subsection (b), if the reviewing court has grave doubt about whether a non-constitutional error substantially affected the jury's verdict, the party alleging harm must win. *See O'Neal,* supra. But, unlike former 81(b)(2), which required reversal unless the reviewing court determined beyond a reasonable doubt that the error did not contribute

to the conviction or punishment, non-constitutional error under the new rule leads to reversal only when the reviewing court has grave doubt about its affect on the jury. In other words, a reviewing court should not reverse a conviction, even when the court cannot say beyond a reasonable doubt that the non-constitutional error did not contribute to the jury's decision on conviction or punishment, unless it has grave doubt about the effect of that error on the jury's determinations.

So, based upon *King*'s interpretation of subsection (b), and *Kotteakos,* appellant's conviction should be reversed only if we have grave doubt about the effect of the erroneous granting of the State's challenge for cause on the jury's determination. Under former 81(b)(2), we held the erroneous grant of a State's challenge for cause was reversible error. *Zinger v. State,* 932 S.W.2d 511 (Tex.Crim.App.1996)(holding wrongful granting of State's challenge for cause reversible error); *Howard v. State,* 941 S.W.2d 102 (Tex.Crim.App.1996)(opinion on reh'g)(erroneous grant of State's challenge for cause reversible error). While Rule 44.2 imposes a less exacting standard, error in the voir dire context is no less impossible to gauge. Given the impossibility of knowing or even speculating about the effect of the improper grant of a State's challenge for cause, I would reserve grave doubt about the effect of that error on the jury's determinations.[2] Ac-

---

**2.** Because "[i]t is impossible to conclude that the erroneous exclusion or inclusion of a juror had an impact on the verdict actually reached" traditional harm analysis has not been applied. GEORGE E. DIX AND ROBERT O. DAWSON, 42 TEXAS PRACTICE § 35.47 at 472 (1995). In *Bell v. State,* 724 S.W.2d 780 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987), we explained the rules for determining harm in the context of erroneous rulings on challenges for cause:

> If a trial court erroneously overrules a defendant's challenge for cause, the defendant may establish harm by showing: (1) exhaustion of his peremptory challenges; (2) denial of a request for additional peremptory challenges; and (3) the seating of a juror upon whom the defendant would have exercised a peremptory challenge. *East v. State,* 702 S.W.2d 606 (Tex. Cr.App.1985); *White v. State,* 629 S.W.2d 701 (Tex.Cr.App.1981), *cert. denied,* 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982); *Her-*

*nandez v. State,* 563 S.W.2d 947 (Tex.Cr.App. 1978); *Payton,* supra. In non-capital murder cases, if the trial court erroneously grants a State's challenge for cause and excludes a qualified juror, the defendant may establish harm simply by showing that the State exhausted all of its peremptory challenges. In such a case the court has effectively given the State the benefit of an additional peremptory challenge. *Payton,* supra. See also *Culley v. State,* 505 S.W.2d 567 (Tex.Cr.App.1974); and *Weaver v. State,* 476 S.W.2d 326 (Tex.Cr.App. 1972). In capital murder cases, if the trial court improperly sustains a State's challenge for cause and excludes a qualified juror, over a defendant's objection, reversible error arises regardless of whether the State has exhausted its peremptory challenges. This is because peremptory strikes are exercised after each prospective juror is questioned, under Art. 35.13, V.A.C.C.P., as opposed to after the entire panel is questioned in a non-capital case. *Grijalva v. State,* 614 S.W.2d 420 (Tex.Cr.App.

cordingly, appellant's conviction should be reversed.

With these comments, I dissent.

1981). See also *Turner v. State*, 635 S.W.2d 734 (Tex.Cr.App.1982).... When the trial court sua sponte excludes a qualified juror, the situation must be distinguished from a similar excusal that is prompted by the State. *Grijalva*, supra, held that any State's unused peremptory strikes remaining at the end of voir dire would not remove the harm of an erroneous excusal of a qualified juror. This conclusion is based on the notion that otherwise the State would receive three unfair advantages over the defense: (1) hindsight in exercising peremptory strikes that was denied to the defense; (2) the benefit of striking last that is statutorily given to the defense by Art. 35.13, V.A.C.C.P.; and (3) the benefit of having the court strike, on behalf of the State, a venireman on appeal after voir dire error has been pronounced. But *Grijalva* is founded on the notion that the State caused the improper excusal by issuing a challenge for cause, and is therefore penalized because of the advantages it would otherwise receive by holding a peremptory strike back. Where the trial judge, not the State, is solely responsible for the im-

proper excusal, the justification for penalizing the State under *Grijalva* disappears. It is entirely appropriate in such a case to fall back on the rationale in *Weaver*, supra, *Payton*, supra, and *Culley*, supra, and assess harm to the defendant on whether the state had remaining peremptory strikes left at the close of the voir dire.

See also *Zinger v. State*, 932 S.W.2d 511 (Tex.Crim.App.1996)(holding wrongful granting of State's challenge for cause reversible error); *Howard v. State*, 941 S.W.2d 102 (Tex.Crim.App.1996)(opinion on reh'g)(erroneous grant of State's challenge for cause reversible error). I do not necessarily agree with this type of "harm analysis," *see Anson v. State*, 959 S.W.2d 203, 205–208 (Tex.Crim.App. 1997) (Meyers, J., concurring); *Zinger*, supra (Meyers, J., concurring), but it has been the law for a long time. And the Court has held that the type of harm analysis applied to voir dire error under Rule 81(b)(2) will continue to apply under the new rule. *Anson*, supra (applying traditional voir dire harm analysis without regard to change in harm analysis under Rule 44.2).