IN THE COURT OF CRIMINAL APPEALS

OF TEXAS






AP-76,101






RAUL CORTEZ, Appellant


v.


THE STATE OF TEXAS






Appeal from Case 416-82415-07 of the

416th Judicial District Court of

Collin County





 Womack, J., filed an opinion concurring in part and dissenting in part, in which Price and
Johnson, JJ., joined.



 I concur with the Court's decision to affirm the judgment of guilt. However, I believe that
Venire Member Forsyth should have been disqualified for cause, and therefore I would sustain
the appellant's fifth point of error and remand the case for a new punishment hearing.

 The Court states that Forsyth gave potentially disqualifying answers "only when she
became confused about the application of the law in death penalty cases. But when she was
guided, step-by-step, through a proper application of the law as it relates to a juror's duties,
Forsyth stated that she would be able to follow the law ."

 This description gives the impression that Forsyth said some potentially disqualifying
things, but then had the law explained to her and agreed to follow the law. A review of her voir
dire examination, though, shows the reverse: Forsyth first had the law explained to her and stated
that she understood it. Afterward she stated that she would require the defense to produce
evidence in order to answer no to the future dangerousness special issue.

 During its examination, the State informed Forsyth that at the punishment phase the State
had the burden of proving beyond a reasonable doubt that the appellant would be a continuing
threat to society: 

 [Q.] Now remember you're only at that point if you have already found the
defendant guilty of capital murder.

 You are not going to erase what you have heard obviously, because up to that
point you will have heard all of the details of the crime.

 The details of the crime itself are very important, and they are very important in
deciding whether or not someone should get a death sentence, but that's not all you have.
You may have additional information, additional evidence presented to you in the
punishment phase. And that evidence may be presented by the State, it may be presented
by the defense. 

 Remember, of course, the defense has absolutely no burden, so whatever evidence
you hear, whether it's something from the guilt/innocence phase, whether it's additional
evidence from the State or additional evidence from the defense, you have to be willing to
consider everything, every single thing and honestly consider every single thing you hear
to see whether you believe that a death sentence or life sentence is appropriate.

 Is that something that you will do?


 A. Yes.


 Q. And again, place absolutely no burden on the defense at that point?


 A. Yes.


 The State later told Forsyth again that "the burden of proof was on the State beyond a
reasonable doubt to answer [the future dangerousness special issue] yes," but Forsyth herself
made no other comments on the subject.

 Defense counsel questioned Forsyth on the matter:

 Q: Now in [the future dangerousness question] the State again has to prove
beyond a reasonable doubt that the person - that there is a probability that the person is a
continuing threat to society, and you indicated that you would not require the defendant to
testify in the first part of the trial, the guilt/innocence part of the trial, and that you could
give him his Fifth Amendment right, you wouldn't have to hear from him before you
could make a decision. And a lot of people say that, but then when it gets to punishment,
if they find the person guilty, they want to hear from him in punishment and they want the
defense to put him on the stand to show the jury that there are certain things, there is
remorse or whatever, and they also want the defense to prove to them that he is not a
continuing threat to society, even though the law is that the State has got to prove that he
is. And a lot of people want to reverse it. They want the defendant to prove that he is not,
and they want to hear from the defendant. 

 Let me ask you first, would you want the defense to prove that the defendant is
not a continuing threat to society?


 A. I would, yeah. I would want that, them to prove - to try to prove that he would
not be.


 Q. In other words, you would want the defense to prove to you -


 A. Everybody has to prove their side.


 Q. You would want both sides to prove something to you?


 A. Yeah.


 Q. Do you think that the defense should produce evidence to demonstrate that he
would not be a continuing threat to society? 


 A. Just what his past was, where his mind is now, how he feels about what
happened.


 Q. Would you want to hear from the defendant in the punishment phase of a
capital murder trial?


 A. Not necessarily.

 That person would have an opportunity to talk to his attorneys and the attorneys
are there to talk for him, so ... [sic]


 Q. But you would want the defense to give you evidence to show you that the
defendant is not a future - is a probability of future danger to society; is that right?


 A. I think that's fair. 

 Near the end of his questioning, defense counsel returned to this subject:

 Q. In answer to that Special Issue Number 1, [sic] is the defendant a continuing
threat to society, I believe you said awhile ago that you would want the defendant to
prove to you that he was not a continuing threat to society; is that right? Is that what you
meant?


 A. If he wants a lighter sentence or a not guilty, yes, he would have to prove that
to me.

 

 Q. No, we are not talking about a not guilty at that point.


 A. Well, okay, a lesser sentence or whatever, yes, I would want that person to
prove that to me.


 Next, defense counsel asked whether Forsyth would be able to make arrangements for her
children if she was selected for the jury, and then the trial court asked her to step outside.
Defense counsel challenged Forsyth for being a "burden shifter": 

[W]hat is perfectly clear is this woman would want the defense to prove that he was not a
continuing threat to society and it would be our burden to do that. And whether she
understands what the legal mumbo jumbo is, the bottom line for her is, she wants us to
prove that he is not a continuing threat .

 The Court says that Forsyth made her disqualifying statements only when she was
"confused," but we have no way of knowing her mental state at the time. The fact that she
referred to "a lighter sentence or not guilty" might seem to indicate confusion, but it also might
have simply been a slip of the tongue as she was attempting to explain her nonconfused position.
Or it might indicate that she thought of answering no to the future dangerousness special issue in
terms of finding the defendant "not guilty" of being a future danger. This would not be a
confused way for a layperson to think of the matter. The burden of proof for finding a defendant
guilty is the same as the burden of proof for finding a defendant to be a future danger - the State
must prove it beyond a reasonable doubt. Or her answers might indicate that, regardless of what
portion of the trial defense counsel wanted to discuss at the moment, Forsyth would have placed
a burden on the defense during both phases of the trial. 

 Inarticulateness is not synonymous with confusion. If we give ourselves the discretion to
wave away disqualifying voir dire answers simply by stating that the venire member had become
"confused," without the record actually showing confusion, the great discretion we give to trial
court voir dire rulings becomes unfettered discretion.

 Forsyth, for her part, did not make any statements indicating that she considered herself to
be confused about the application of the law. After defense counsel made his objection, there was
no statement by either the State or the trial court indicating that they believed Forsyth was
confused. Rather, the State's argument was that Forsyth merely "wanted" to hear evidence from
the defense but would not require it (an argument belied by Forsyth's repeated use of the
imperative). Defense counsel asserted that Forsyth may not have understood the concept of
burden of proof, but he did not believe she was confused when explaining how she would make a
decision on the case.

 Perhaps if the State or the trial court had taken the opportunity, after the defense's
questioning ended, to ask her about these statements we would have enough information in the
record to determine whether Forsyth was confused when answering the defense's questions. But
they did not, and we are left with Forsyth's unambiguous statement that she would place a
burden of proof on the defendant.

 Forsyth's earlier answer to the State's questioning ("And again, place absolutely no
burden on the defense at that point?" "Yes") came at the end of a lengthy compound question,
and, compared with the clarity of her later answers, is ambiguous. While we give great deference
to the trial court in granting and denying challenges for cause, examining Forsyth's testimony as
a whole, I believe that a one-word response to a compound question is insufficient to support the
trial court's ruling in this case.

 The trial court could have kept Forsyth's apparent bias against the law from harming the
appellant in numerous ways. It could have spoken with her to further explain the law, and asked
her additional questions to see if she really meant what she had just said. It could have granted
the appellant additional strikes, something many trial courts do in capital cases in order to guard
against this sort of error. Or, after listening to Forsyth explain her bias against the law, it simply
could have excused her for cause even if it believed she was confused. (1) Because it did none of
these things, the appellant was forced to exercise one of his statutorily allotted strikes to Forsyth.
I believe this requires a new punishment hearing, and I respectfully dissent from the Court's
judgment affirming the punishment portion of his sentence.


Filed September 14, 2011

Do not publish.
1. See Jones v. State, 982 S.W.2d 386, 394 (Tex. Cr. App. 1998) ("The venire comprises so many jurors who
are clearly qualified that it is unnecessary to err by denying a challenge for cause on a close question."); Threadgill
v. State, 146 S.W.3d 654, 674 (Tex. Cr. App. 2004) (Womack, J., concurring).