COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

RAMON MOLINA, JR.,                                      )

                                                                              )              
No.  08-02-00529-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )            
County Court at Law #2

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20020C08952)

                                                                              )

 

 

O
P I N I O N

 

Appellant Ramon
Molina, Jr. appeals his conviction for the offense of driving while intoxicated
(ADWI@).  A jury found Appellant guilty and the trial
court assessed punishment at 180 days confinement in the El Paso County
Detention Facility, probated for 15 months community supervision, and a fine of
$750, probated to $350.  He brings three
issues which challenge the legal and factual sufficiency of the evidence to
sustain his conviction and contends the trial court erred in granting the State=s motion to strike a venireperson for
cause.  We affirm.








On the evening of
December 21, 2001, Michael Rubio, his girlfriend, and one of her friends, had
just left Chico=s Tacos
and were stopped at a stoplight at McRae and Wedgewood when they were struck
from behind and knocked into the intersection. 
Mr. Rubio and the other driver, the Appellant, signaled each other to
pull into the parking lot.  Mr. Rubio=s girlfriend called 911.  Mr. Rubio got out of his car to ask Appellant
what happened, but Appellant was on his cell phone and stayed in his car.  So, Mr. Rubio got back into his car and
waited for the police.

A fire truck
arrived about five minutes later.  Both
Mr. Rubio and his girlfriend recalled that Appellant tried to leave, but the
fire truck blocked Appellant=s
car.  Firefighter Arturo Provencio
testified that he was driving the fire truck. 
As Lieutenant Provencio was checking the cars for leaking fluids,
Appellant got out of his car.  Lieutenant
Provencio noticed that Appellant stumbled and lost his balance while getting
out of the vehicle.  Firefighter and EMT
Raymundo Munoz testified that he exited the fire truck and walked towards
Appellant=s car and
could hear its engine running.  Mr. Munoz
opened the passenger=s
side door and asked Appellant if he was okay and Appellant replied, AI=m
okay.@  Appellant was revving the engine and at his
captain=s
instruction, Mr. Munoz reached in, turned the engine off, and grabbed the
keys.  Mr. Munoz recalled seeing
Appellant stumbling and unable to keep his balance while getting out of the
vehicle.








The police arrived
soon after the fire department.  El Paso
Officer Hector David Flores was one of the officers dispatched to the accident
scene that evening.  Officer Flores
observed Appellant standing beside his car. 
Officer Flores approached him and asked for vehicle information, his driver=s license, and about what had caused
the accident.  Appellant provided the
requested information and told Officer Flores that the car in front of him
stopped on a yellow light, which caused the collision.  Officer Flores was standing about an arm=s length distance from Appellant as he
talked and noticed a strong odor of alcohol on Appellant=s
breath.  The officer also observed that
Appellant=s speech
was slurred, his eyes were glassy and bloodshot, and that he had poor
balance.  Officer Flores decided to
perform field sobriety tests and asked Appellant if there was anything wrong
with him.  Appellant told the officer
that there was nothing wrong with him. 
Officer Flores did not observe any visible signs of head injury.

Officer Flores
first performed the horizontal gaze nystagmus test (AHGN@) on Appellant.  Officer Flores asked Appellant if he was
sick, ill, or injured, to which Appellant replied no, and the officer also
asked Appellant to remove his glasses. 
Officer Flores recalled that Appellant had a jerking of the eyes on the
test and failed that particular test. 
Officer Flores next performed the walk-and-turn test and then the
one-leg stand test, other components of the field sobriety tests.  In the walk-and-turn test, Officer Flores
observed that Appellant had poor balance, was swaying badly, and that he had to
use his arms to maintain his balance.  For the one-leg stand test, Appellant used his
hands to keep his balance, instead of keeping his hands to his side.  Officer Flores determined that Appellant
failed both additional tests.  According
to Officer Flores, these field sobriety tests were performed on a flat-level
surface in a well-lit parking lot.  Based
on his training and experience, Officer Flores concluded that Appellant was
under the influence of alcohol and placed Appellant under arrest for DWI.








El Paso Officer
Fernando Morales was dispatched to the accident scene and assisted Officers
Flores and Bonilla in the investigation. 
Based on his expertise as a member of the DWI task force, Officer
Morales held the opinion that Appellant had been drinking and was intoxicated
that evening.  Officer Morales
transported Appellant to the police station and gave him his Miranda
warnings and statutory warnings regarding the breath test.  Since Appellant refused to give a breath
sample, Officer Morales videotaped Appellant being given the warnings and
refusing to do the field sobriety tests again in the station.  In Officer Morales=
report, Appellant admitted to drinking six beers between 3:30 p.m. and 6:30
p.m. that day and stated that he had not been injured lately and had no
physical handicaps.

At trial,
Appellant testified on his own behalf. 
At the time, Appellant was employed as a contractor for the Army, doing
maintenance manuals for helicopters.  On
the day before the accident, Appellant went to bed between 10:30 and 11 p.m.
and woke up at 5:30 a.m. as usual. 
Appellant worked from 6:30 a.m. to 3:30 p.m.  After work, Appellant had a 12-pack with a
friend from work on a bypass in Northeast El Paso.  They were there until 6:30 p.m. and then they
went to the friend=s house
off of Wedgewood to finish laying tile at the house.  Appellant stayed at his friend=s house until 9:30 or 10 p.m. at which
point they went to Chico=s
Tacos.  After eating, Appellant took his
friend home.  As Appellant was driving on
McRae on his way back home, he was using the phone and the CD changer when he
hit the car in front of him.  Appellant
pressed on the brakes, but could not avoid the collision.  He was shocked when the accident occurred and
remembered hitting his head in between the steering wheel and the dashboard,
but did not tell anybody.  Appellant
recalled that the accident occurred around 11 p.m.








According to
Appellant, after the accident the people in the other car got out and Appellant
was going to get out too, but the other driver came over.  Appellant asked him if they were okay and the
driver replied yes.  Appellant also asked
if he wanted to move the vehicles out of the way and the driver replied yes and
they both drove into the parking lot. 
Appellant denied trying to leave the scene.  With respect to the field sobriety tests,
Appellant testified that it was cold that night and he was only wearing a
T-shirt.  The area in which he was told
to perform the tests did not feel flat. 
Appellant explained that he refused the breathalyzer test because his
lawyer friends always say Adon=t do it.@  He refused to do the field sobriety tests
because he had already done them.  At
trial, Appellant stated that he believed the accident was a result of him not
paying attention and he denied having been intoxicated.

Sufficiency
of the Evidence

In Issue One,
Appellant contends the trial court erred in denying his motion for a directed
verdict because the State failed to prove that his mental or physical faculties
were impaired by consumption of alcohol. 
Appellant=s
argument is in reality a legal sufficiency challenge, therefore we will review
his complaint with Issue Two, in which Appellant challenges the legal and
factual sufficiency of the evidence to sustain his conviction for DWI.  See Madden v. State, 799 S.W.2d 683,
686 (Tex.Crim.App. 1990).

Standards
of Review

In reviewing the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Lacour v.
State, 8 S.W.3d 670, 671 (Tex.Crim.App. 2000).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See
Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v.
State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).  Instead, our duty is to determine whether if
both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the
verdict.  See Adelman, 828 S.W.2d
at 421-22.  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict.  Matson, 819 S.W.2d at 843.








In conducting a
review of the factual sufficiency of the evidence, we view all the evidence in
a neutral light, both for and against the verdict, to determine whether it
demonstrates that the proof of guilt is so obviously weak as to undermine our
confidence in the jury=s
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000); Clewis v. State, 922
S.W.2d 126, 134 (Tex.Crim.App. 1996).  We
review the evidence supporting a fact in dispute and compare it to evidence
tending to disprove that fact.  Johnson,
23 S.W.3d at 6-7; Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App.
1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54
(1997).  Although we are authorized to
set aside the jury=s
determination, we must give appropriate deference to its determination and
should not intrude upon the jury=s
role as the sole judge of the weight and credibility given to evidence
presented at trial.  See Johnson,
23 S.W.3d at 8-9.  We will set aside a
verdict only where the evidence supporting guilt is so obviously weak or the
contrary evidence so overwhelmingly outweighs the supporting evidence as to
render the conviction clearly wrong and manifestly unjust.  Ortiz v. State, 93 S.W.3d 79, 87
(Tex.Crim.App. 2002), cert. denied, 123 S.Ct. 1901, 155 L.Ed.2d 824
(2003).  A jury=s
verdict is not manifestly unjust merely because the fact finder resolved
conflicting views of the evidence in favor of the State.  Cain v. State, 958 S.W.2d 404, 410
(Tex.Crim.App. 1997).

Driving
While Intoxicated

A person commits
the offense of driving while intoxicated if that person is intoxicated while
operating a motor vehicle in a public place. 
See Tex.Pen.Code Ann.
' 49.04(a)(Vernon 2003).  Under the Penal Code, Aintoxication@ means Anot
having the normal use of mental or physical faculties by reason of the
introduction of alcohol . . . into the body.@  See Tex.Pen.Code
Ann. '
49.01(2)(A).








Appellant contends
that no rational jury could have concluded that he was intoxicated, that is,
that he did not have normal use of mental or physical faculties by reason of
the introduction of alcohol into his system. 
The evidence at trial showed that Appellant was operating a motor
vehicle which struck Mr. Rubio=s
car from behind while Mr. Rubio was stopped at a stop light at the intersection
of McRae and Wedgewood in El Paso, Texas. Witnesses at the scene observed
Appellant stumble and lose his balance while exiting his vehicle.  Officer Flores testified that while standing
an arm=s length
away, he smelled a strong odor of alcohol on Appellant=s
breath and observed Appellant=s
slurred speech, glassy bloodshot eyes, and poor balance.  Officer Flores administered the standard
field sobriety tests on a flat area of the parking lot and testified that
Appellant failed all of the tests. 
Before Officer Flores performed the tests, he asked Appellant if he was
sick, ill, or injured and Appellant said no--evidence which is contrary to
Appellant=s
testimony at trial regarding his head injury during the accident.  Officer Flores testified that being cold or
nervous would not affect the HGN test, though shivering and fatigue could
effect someone=s
performance on the one-leg stand test. 
It was both Officer Flores=
and Officer Morales= opinion
that Appellant was under the influence of alcohol that evening.  Viewing the evidence in a light most
favorable to the verdict, we conclude that it is legally sufficient to sustain
Appellant=s
conviction for DWI.








In his factual
sufficiency challenge, Appellant asserts the jury=s
verdict is against the weight of the evidence because there is an enormous
amount of evidence to disprove he was intoxicated.  In his brief, Appellant points to evidence
that:  (1) he consumed alcohol between
3:30 and 6:30 p.m., while the accident occurred around 11 p.m.; (2) there was
no evidence of alcoholic beverages in his vehicle; (3) although not injured,
hitting his head could have affected his performance on the HGN test; and (4)
it was a cold night and Appellant was wearing only a 

T-shirt, he may have been fatigued,
and the surface area of the testing location did not feel flat to Appellant,
all of which were factors that could have affected his performance on the field
sobriety tests.  After viewing all the
evidence, we find that the contrary evidence does not so overwhelmingly
outweigh the evidence supporting guilt as to render the conviction clearly wrong
and manifestly unjust.  Accordingly, we
conclude that the evidence is both legally and factually sufficient to support
the jury=s
verdict.  Issues One and Two are
overruled.

State=s Challenge for Cause

In Issue Three, Appellant
contends the trial court erred in granting the State=s
motion to strike prospective juror Duane Baker for cause under Article 35.16(b)
of the Texas Code of Criminal Procedure. 
See Tex.Code
Crim.Proc.Ann. art. 35.16(b)(3)(Vernon Supp. 2004). 

Standard
of Review 








To show error in
the trial court=s grant
of the State=s
challenge of Mr. Baker for cause, Appellant must show that either:  (1) the trial court applied the wrong legal
standard in sustaining the challenge; or (2) the trial court abused its
discretion in applying the correct legal standard.  See Jones v. State, 982 S.W.2d 386,
388-89 (Tex.Crim.App. 1998), citing, Vuong v. State, 830 S.W.2d
929, 943 (Tex.Crim.App.), cert. denied, 506 U.S. 997, 113 S.Ct. 595, 121
L.Ed.2d 533 (1992).  A defendant does not
have a right to have a particular individual serve on the jury.  Id. at 393.  A defendant=s
constitutional right to trial by an impartial jury is not violated by every
error in the selection of a jury.  Id.
at 391 (only in every limited circumstances when a juror is erroneously excused
because of general opposition to the death penalty does the exclusion of a
juror by an unintentional mistake amount to a constitutional violation).  If the trial court erred by granting the
State=s motion,
we must disregard the error unless it affected Appellant=s
substantial rights.  Jones, 982
S.W.2d at 391-92.  The defendant=s only substantial right is that the
jurors who do serve be qualified.  Id.
at 393.  The erroneous excusing of a veniremember
will call for reversal only if the record shows that the error deprived the
defendant of a lawfully constituted jury. 
Id. at 394.

Voir
Dire Examination of Mr. Baker

During the
individual voir dire examination of Mr. Baker, the following exchange occurred:

The
State:         Mr. Baker, are you a
defense attorney?

 

Mr.
Baker:       From >71
to >76 I was an assistant district
attorney.  From >73
to >76 I was the first assistant
district attorney.  Since >82 I represented police officers in
civil right=s [sic]
cases.  Starting four years ago, I
started doing criminal defense work.

Now, do I believe in
the field sobriety test? No.  As Judge
Gonzalez can tell you.

 

The
State:         Well, given all that, do
you think you would be able to sit on a jury and hear the evidence and sit as
an impartial juror?

 

Mr.
Baker:       Well, of course, you know, I
mean I understand what the rules and the law and how all that works is.  I need to be in front of Judge Phil Martinez
at 8:00, I have a guilty plea tomorrow at 8:30, but if I need to be here, I=ll be here.  And I=m
leaving town on an airplane about 1:15 tomorrow.  I have a court ordered--what do they call it
over there now-- provisional discovery plan. 
And five of us are going to Austin to depose a serology criminalist at
the DPS lab.  

 

                                                              .               .               .

 

The
Court:        All right.

 








The
State:         Your honor, I move to
strike Mr. Baker.  He said, I could of,
but he did not believe in the validity of the field sobriety test.  He, obviously, has a biased opinion about
such tests even before testimony is proffered as to their validity and I move
to strike him.

 

The
Court:        I will grant your motion.

 

Defense:           Your Honor, note my objection for the
record.  I believe he said that being a
defense attorney he=s had an
opportunity to review the studies and learn what the basis of the field
sobriety test is, and just because he has that extra knowledge doesn=t mean-- he indicated that he would be
able to listen to the evidence and make a decision based on the evidence that
he heard.  But, because of his special
knowledge in the standardized field sobriety test, I mean, that would just go
to the -- using his common sense and reasoning in evaluating that evidence and
I don=t believe
that would disqualify him.

 

The
Court:        So noted.

 

Even assuming the trial court erred
in its application of Article 35.16(b)(3) in this case, Appellant fails to
explain on appeal how he was denied a lawfully constituted jury nor does he
argue that his jury was unfair or impartial. 
Without such a showing, Appellant has not shown the harm required for
reversal.  Issue Three is overruled.

Accordingly, we
affirm the trial court=s
judgment.

 

 

February
26, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)