**Affirmed as Modified; Opinion Filed October 28, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-01226-CR

**SAMUEL DAVID GRIMES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1362881-R**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Evans

After a jury trial, Samuel David Grimes was convicted of aggravated robbery and assessed punishment at fifteen years' imprisonment. In three issues, appellant challenges his conviction asserting the evidence was legally insufficient and complains of error relating to his "for cause" challenge to one prospective juror and the denial of his request for an additional peremptory challenge. Concluding appellant's issues lack merit, we affirm the trial court's judgment.

### BACKGROUND

Complaining witness Jose Hernandez testified that he responded to a Craigslist internet post involving a motorcycle for sale. After negotiating to purchase the motorcycle for $4,200, he and the seller agreed to meet at an address on Oak Highlands Drive in Dallas, Texas. Hernandez

withdrew the money in cash from his bank account and later that evening, on November 25, 2013, Hernandez's father drove him and Hernandez's three-year old daughter in his father's truck from their home in Saginaw, Texas to the Dallas address. Hernandez brought his wife's handgun with him for protection.

When they arrived at the Dallas address around 10 p.m., there were no cars parked on the cul-de-sac street, and they parked the truck facing out from the cul-de-sac. Hernandez texted the seller that he was outside. The seller replied that he was at a gas station getting gas for the motorcycle. A couple of minutes later, a white Honda Accord parked behind the truck. The front license plate of the Honda was missing. As Hernandez exited the truck, the gun was in his jacket pocket. Around the same time the driver of the Honda, identified at trial as appellant, exited his vehicle. Although Hernandez was at the back of the truck, appellant passed him to see who was in the truck. Appellant then walked toward Hernandez, asking if he wanted him "to go get the bike from the back of the house or did I want him to bring it around." As soon as Hernandez told him to bring it around, appellant pulled out a gun, pointed it at Hernandez, and told him "to hop down easy on the floor" and yelled at him to "walk back towards the back of the bed and get on the floor." Hernandez thought he was being robbed for the cash he had brought to purchase the motorcycle.

When Hernandez's father got out of the truck to see what was going on, appellant pointed the gun at his father, telling him to walk back and get on the floor. At that moment, Hernandez took out his gun and fired four shots at appellant from a distance of about five to eight feet. He believed he hit appellant, who took off running between two houses. Hernandez and his father got back in the truck and drove home, where they immediately called 9-1-1 and reported the incident to the Saginaw police. The testimony of Hernandez's father was largely consistent with Hernandez's testimony.

–2–

A crime scene analyst for the Dallas police testified that he found five .380 fired casings and drops of blood at the scene. He also went to Baylor Hospital where he took pictures of an injured person identified as appellant at the emergency room. Appellant had bandages on his arms.

Dallas police officer Matt Bryant testified he was the lead detective in the investigation which began after multiple 9-1-1 calls reporting "shots fired" around the Oak Highlands Drive area came in around 10 p.m. that night. Shortly thereafter, another 9-1-1 call came in about a shooting victim from a residence on Catalpa Road, which is less than one mile from Oak Highlands Drive. Officers went to the home on Catalpa where they interviewed appellant. Appellant could not describe his attackers and his story was inconsistent. They also saw a white car parked in front of the home without license plates and the vehicle make and model covered with white tape. Through the car's windshield, license plates could be seen under the seat.[1] The officers also found a black ski mask and batons like police officers use in the vehicle.

Officers investigating the shooting victim eventually connected it with the incident on Oak Highlands Drive. Saginaw officers contacted the Dallas Police Department about Hernandez's report and Bryant brought Hernandez and his father to Dallas to be interviewed. Appellant was ultimately charged with aggravated robbery and pleaded not guilty. After a jury trial, appellant was found guilty of the offense and assessed punishment at fifteen years' imprisonment. This appeal followed.

**ANALYSIS**

In his first issue, appellant challenges the sufficiency of the evidence to support his conviction. Specifically, appellant argues there is no evidence that appellant did any act with the

---

[1] The car was registered to the father of appellant's common law wife at the Catalpa address where the father, appellant, and appellant's wife lived.

intent to commit theft, an element of a robbery offense. When we conduct a sufficiency review, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 316–17 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). "Our review of 'all the evidence' includes evidence that was properly and improperly admitted." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001)).

A person commits the offense of aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. §§ 29.03(a)(2) (West 2011). A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property; appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(a), (b)(1) (West Supp. 2016). "Deadly weapon" includes a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. *Id.* § 1.07(a)(17)(A) (West Supp. 2016). An intent to steal may be inferred from a defendant's conduct or actions. *See King v. State*, 157 S.W.3d 873, 874 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

Although Hernandez testified he did not specifically recall appellant asking for or demanding the money, there was evidence that the motorcycle seller insisted the $4,200 payment be in cash and chose the meeting location. When Hernandez texted the seller upon his arrival at the chosen location, the seller responded he was at a gas station getting gas for the motorcycle. Appellant drove up in the white Honda with the front license plate removed shortly thereafter.

–4–

After checking out who was in the truck, appellant asked if Hernandez wanted him to get the motorcycle. Although Hernandez responded in the affirmative, appellant instead pointed a gun at Hernandez and told him to get down on the ground. When Hernandez's father got out of the truck, appellant pointed the gun at him. Hernandez believed appellant was trying to rob him and, fearing for his life and that of his daughter and father, shot appellant. Neither Hernandez nor his father saw a motorcycle and the investigating officers never recovered a motorcycle. Based on this evidence, the jury could have inferred that appellant used the motorcycle internet post to lure Hernandez to Oak Highlands Drive with $4,200 in cash not to sell a motorcycle, but so that he could steal the money. Moreover, the jury could have easily concluded appellant's failure to demand the money resulted from the distraction of Hernandez's father getting out of the car, at which point Hernandez shot appellant, thwarting his plans. On the record before us, the evidence is legally sufficient to support appellant's aggravated robbery conviction. We resolve appellant's first issue against him.

In his second and third issues, appellant contends the trial court abused its discretion in (1) denying his "for cause" challenge to venireperson number 65, and (2) denying his subsequent request for an additional peremptory challenge after he used his peremptory challenge on venireperson 65. He asserts that after the trial court denied his request for an additional peremptory challenge, another objectionable venireperson was seated on the jury.[2]

We review the trial court's rulings on challenges for cause and requests for an additional peremptory challenge under an abuse of discretion standard. *See Swearingen v. State*, 101

---

[2] *See Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014) (to establish harm for erroneous denial of a challenge for cause, defendant must establish (1) he asserted a clear and specific challenge for cause, (2) he used a peremptory challenge on complained-of venire member, (3) his peremptory challenges were exhausted, (4) his request for additional strikes was denied, and (5) an objectionable juror sat on jury).

S.W.3d 89, 89–99 (Tex. Crim. App. 2003) (challenge for cause); *Cooks v. State*, 844 S.W.2d 697, 717 (Tex. Crim. App. 1992) (additional peremptory challenge).

A venireperson may be challenged for cause if he or she cannot impartially judge the credibility of witnesses. *See Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999). But a potential juror is not challengeable for cause merely because he would give a certain class of witness "a slight edge in terms of credibility" because "'complete impartiality cannot be realized as long as human beings are called upon to be jurors.'" *Id.* at 560 (quoting *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998)). Consequently, we simply require a juror to be open-minded and persuadable, with no extreme or absolute positions with respect to the credibility of any witness. *Id.*

After the prosecutor and defense counsel could not agree on whether venireperson number 65 was challengeable for cause, the potential juror was questioned further about police officer testimony. The juror initially opined that he thought prior to taking the stand, a police officer had more credibility than a normal witness. Upon further questioning, however, the juror clarified how he would resolve conflicting testimony:

> [Defense Counsel]: And if any conflicts in the testimony between a police officer and another witness, you are going to resolve that in favor of the police officer?
>
> [Prospective Juror]: That's a hard question because you also said we get to make a judgment on what we believe the witness -- we believe the witness or not. That was brought up later. So I think you have to say, do I believe this witness or do I not believe him or do I believe them 50 percent. I think that adds -- I think that has to enter into the fact because when you see them give witness, then you say, I don't believe them, then I would have to say yes, the police officer is right. If you have to say -- If they have given conflicting testimony, you're going to have to make a judgment on who you believe. And I would have to say that, based on your belief after the testimony, you're going to pick one or the other.
>
> .    .    .
>
> [Prosecutor]: And so just because we bring somebody out here with a police uniform or a badge on, you're not automatically going to assume that they are

going to tell the truth all the time, correct, any more than any other witness would?

[Prospective Juror]: No, I never said that.

.   .   .

[Prosecutor]: So you could wait and listen to them testify and then determine their credibility just like any other witness based on their training and experience and other facts that are important to you, correct?

[Prospective Juror]: That is correct.

[Prosecutor]: And you have an open mind to that, correct?

[Prospective Juror]: Correct.

Defense counsel then asked, "Would it be fair to say that you have a bias in believing police officers are credible?" to which the juror replied:

[Prospective Juror]: Probably because I have not run into bad ones.

[Defense Counsel]: So in terms of determining the credibility of a witness, you have a bias in favor of police officers? And I'm not trying to --

[Prospective Juror]: No, I know. It's a fine line. I told you my son was a victim of an aggravated assault. He said there was some that were saying, oh, he didn't do it, and there were others that said yes, I saw him do it. And at some point I'm going to have to say, where is the credibility of that person? So you're asking me what's the credibility of someone I don't know versus the credibility of a police officer. Is that what you are asking me?

[Defense Counsel: That's what I'm asking.

[Prospective Juror]: And I would have to say I would lean toward the credibility of the police officer.

[Defense Counsel]: Even if you don't know the police officer?

[Prospective Juror]: Even if I don't know him, I would lean that way until you say, I see their testimony, I hear what they have to say and facts are coming out in the case.

Although venireperson number 65 stated he might give a police officer more credibility before he took the stand, he also stated he would ultimately judge their credibility based on their testimony and "hearing what they have to say" and the facts in the case. Taken as a whole, the

potential juror's testimony did not reveal an extreme or absolute position regarding the credibility of police testimony. *See Feldman v. State*, 71 S.W.3d 738, 747 (Tex. Crim. App. 2002) (potential juror not challengeable for cause because he would "lean toward" believing police officer over lay person). Based on the record before us, we cannot conclude the trial court abused its discretion in denying appellant's challenge for cause. We resolve appellant's second issue against him. In light of our determination that the trial court did not err in denying the appellant's "for cause" challenge, appellant was not entitled to an additional peremptory challenge and the trial court properly denied appellant's request. Accordingly, we resolve appellant's third issue against him.

In three cross-issues, the State argues that the trial court's written judgment should be modified to reflect (1) an affirmative finding to the deadly weapon allegation, (2) appellant's plea of "Not True" to the enhancement paragraph, and (3) the jury's finding of "True" to the enhancement paragraph.

Where, as here, the record provides the necessary information to correct inaccuracies in a trial court's judgment, we have the authority to modify the judgment to speak the truth. *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Our review of the record confirms, that the indictment alleged appellant "used and exhibited a deadly weapon, to-wit: a FIREARM" during the commission of the robbery. The jury found appellant guilty as alleged in the indictment. The judgment should therefore reflect a deadly weapon finding. *See Crumpton v. State*, 301 S.W.3d 663, 664 (Tex. Crim. App. 2009). Likewise, the reporter's record and the jury charge indicate appellant pleaded "Not True" to the enhancement allegation at the punishment hearing. According to the reporter's record and the jury charge, the jury found the enhancement paragraph "True." Accordingly, we modify the judgment of conviction as follows:

(1) Under the heading "Findings on Deadly Weapon" we delete "N/A" and add the words "YES, A FIREARM" under that heading.

(2) Under the heading "Plea to 1st Enhancement Paragraph" we delete "N/A" and add the words "Not True" under that heading.

(3) Under the heading "Findings on 1st Enhancement Paragraph" we delete "N/A" and add the word "True" under that heading.

As modified, we affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
151226F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SAMUEL DAVID GRIMES, Appellant

No. 05-15-01226-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1362881-R
Opinion delivered by Justice Evans, Justices Lang and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

(1) Under the heading "Findings on Deadly Weapon" we delete "N/A" and add the words "YES, A FIREARM" under that heading.

(2) Under the heading "Plea to 1st Enhancement Paragraph" we delete "N/A" and add the words "Not True" under that heading.

(3) Under the heading "Findings on 1st Enhancement Paragraph" we delete "N/A" and add the word "True" under that heading.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 28th day of October, 2016.