

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00028-CR

_____

MARCUS RASHAD WILLIAMS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1795907

---

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. INTRODUCTION

A jury found that Marcus Rashad Williams, while under a sudden passion, murdered Lawrence Garcia Jr. by shooting him with a firearm. Tex. Penal Code Ann. § 19.02(b), (d). Williams raises two points on appeal. First, he contends that the trial court erred by failing to suppress a photo lineup and an in-court identification. We overrule this point because the identification procedure was not impermissibly suggestive. *See* Tex. Code Crim. Proc. Ann. art. 38.20. Second, Williams argues that the trial court erred by denying his challenge for cause against a juror. We overrule this point because Williams did not show that the juror was so biased against him that the juror could not carry out his oath and instructions according to the law. *See id.* art. 35.16. Accordingly, we affirm.

## II. BACKGROUND

Shortly before 7:00 p.m. on February 2, 2020, Garcia drove his friend T.C. home.[1] Garcia's friends A.H., J.C., and R.R. accompanied them. At T.C.'s house, his aunt, Cristina Watkins, and her boyfriend, Williams, were waiting in the front yard, along with several other people who lived in the house.

When T.C. got out of the car, Watkins jumped into the back seat and began pulling A.H.'s hair. Watkins then exited the car. Garcia backed the car out of the

---

[1]Because most of the people involved in the incident were—or could have been—minors at the time, we identify them by initials only. *See* Tex. R. App. P. 9.10.

driveway and hit Watkins. Garcia drove away from the house, with A.H., J.C., and R.R. still in the car. Watkins shouted, "Shoot him, Baby," or words to that effect.

Williams walked out into the street, raised a gun, and fired a single shot into the departing vehicle. J.C. saw Williams do this, and he also heard a gunshot. The shot struck Garcia in the back of the head. The car coasted to a stop on a bridge nearby, where A.H. called 911. Watkins saw Williams running back to the house from the street and carrying a gun.

Medical technicians transported Garcia to the hospital where he died early the next morning. Responding officers transported A.H., J.C., and R.R. to a City of Fort Worth police station to be interviewed and to meet with their parents.

At the police station, J.C. initially misremembered Williams's first name as "Marco." J.C. knew Williams from spending time with T.C. at Watkins's house while Williams visited Watkins. J.C. and his mother looked up Williams on social media, found the correct spelling of his first name and a picture of him, and showed the picture to police. J.C. or his mother also showed A.H. the photograph. A.H. did not recognize the photograph. Then, the police presented J.C. with a lineup; he identified Williams. A.H., who had never seen or met Williams before that night, was shown three photo lineups, but she was not able to identify Williams until viewing the third lineup.[2]

_____

[2]A.H. was not asked to, and did not, identify Williams in the courtroom at trial.

3

Before trial, Williams filed a motion to suppress J.C.'s and A.H.'s identifications. The court took up the motion before trial began, out of the presence of the jury, and J.C. and A.H. testified on voir dire. The trial court denied the motion but granted Williams a running objection.

At trial, J.C. testified that he had spent time at Watkins's house and was familiar with both Watkins and Williams. He knew Williams as Watkins's boyfriend. When he initially testified, J.C. stated that Williams was not in the courtroom. However, after a break, he asked prosecutors for an opportunity to return to the stand so that he could identify Williams, stating he had not understood the question initially, but that he did see Williams in the courtroom. Williams did not object to the State's recalling J.C. for this purpose or to his subsequent testimony identifying Williams and did not reurge his running objection.

## III. DISCUSSION

## A.  The Pretrial Identification Procedure Was Not Impermissibly Suggestive

Williams argues that because J.C. and his mother had located a photograph of him based on their prior knowledge that the shooter was Watkins's boyfriend, the pretrial lineup procedure was improperly suggestive. We disagree.

In-court identification evidence must meet the due-process standard of fairness. *Neil v. Biggers*, 409 U.S. 188, 196, 93 S. Ct. 375, 380–81 (1972). A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused

due process of law. *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968); *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995). An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification. *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008); *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).

Whether a pretrial identification procedure is impermissibly suggestive is a mixed question of law and fact that does not turn on an evaluation of credibility or demeanor; therefore, we apply a de novo standard of review. *Gamboa v. State*, 296 S.W.3d 574, 581–82 (Tex. Crim. App. 2009).

Williams states that this case involves a unique fact scenario because the witness was shown a photo lineup that the witness helped create. However, our sister court addressed a very similar situation in *Malley v. State*, No. 01-19-00127-CR, 2020 WL 4006439, at *3 (Tex. App.—Houston [1st Dist.] July 16, 2020, no pet.) (mem. op., not designated for publication). In that case, before the police conducted their photographic lineup, a witness's father had shown him a photograph of a suspect that the father had found on social media after the witness described the suspect from his prior interactions, including spending a considerable amount of time in the suspect's home. *Id.* Relying on the reasoning in *Rogers v. State*, a case from the Texas Court of Criminal Appeals in which the photo lineups shown to witnesses included the defendant's arrest photograph that the witnesses had seen in a newspaper article the day before, the First Court of Appeals held that the lineup was not impermissibly

5

suggestive and that the identification was properly admitted. *Id.* (relying on *Rogers v. State*, 774 S.W.2d 247, 260 (Tex. Crim. App. 1989), *overruled in part on other grounds by Peek v. State*, 106 S.W.3d 72 (Tex. Crim. App. 2003)).

In *Rogers*, the Court of Criminal Appeals held that because law enforcement was not the source of any suggestibility of the lineup's photographs, a rule of exclusion based on the lineup's being impermissibly suggestive does not apply. 774 S.W.2d at 260. Instead, the source of the identification might, at most, affect the weight, and not the admissibility, of the identification. *Id.*

We apply the same reasoning here. J.C. and his mother located the photograph that was later included in the lineup based upon J.C.'s personal knowledge of Williams's identity and his relationship to Watkins, and not through any acts of law enforcement. J.C.'s knowledge was based on time spent at Watkins's home, where he had seen Williams. No evidence suggests that J.C.'s identification of Williams arose from improper state action. Because the pretrial identification procedure was not impermissibly suggestive, we overrule Williams's first point. *See Rogers*, 774 S.W.2d at 260; *Malley*, 2020 WL 4006439, at *3.

## B. The Trial Court Did Not Abuse Its Discretion by Declining to Strike Veniremember Number One for Cause

In his second point, Williams challenges the trial court's denial of his challenge for cause to the veniremember in seat one (V.M. One). Williams properly preserved

his complaint for appeal. *See Buntion v. State*, 482 S.W.3d 58, 83 (Tex. Crim. App. 2016).

We give great deference to the trial court's discretion during voir dire. *Curtis v. State*, 205 S.W.3d 656, 659 (Tex. App.—Fort Worth 2006, pet. ref'd); *see Samaripas v. State*, 454 S.W.3d 1, 5 (Tex. Crim. App. 2014); *Russeau v. State*, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005) (holding that the trial court in jury selection is in the best position to evaluate a prospective juror's demeanor and responses). We review the entire record to determine if the evidence is sufficient to support the trial court's ruling on a challenge for cause. *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011). We reverse only for clear abuse of discretion. *Hudson v. State*, 620 S.W.3d 726, 731 (Tex. Crim. App. 2021).

A juror who cannot impartially judge the credibility of the witnesses has a bias or prejudice in favor of or against the defendant. Tex. Code Crim. Proc. Ann. art. 35.16(a)(9); *Feldman v. State*, 71 S.W.3d 738, 745 (Tex. Crim. App. 2002) (op. on reh'g), *superseded by statute in part*, Tex. Code Crim. Proc. Ann. art. 37.071. However, a venireperson ought not be struck for cause simply because he would slightly favor certain classes of witnesses, such as police officers and doctors, when deciding credibility because "[c]omplete impartiality cannot be realized as long as human beings are called upon to be jurors." *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998); *see Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999). Before a potential juror can be excused for cause, the proponent of the challenge must show that the

person expressed an extreme or absolute position on the credibility of witnesses and was not open-minded and persuadable. *Feldman*, 71 S.W.3d at 747; *Jones*, 982 S.W.2d at 389.

Here, one venireperson stated that if an officer took the stand to testify, she would give the officer more benefit of the doubt when assessing credibility. She said that to her, the officer's position would lend more credence initially, depending how the testimony aligned with the facts, which would temper the credit she gave to the testimony. The State asked her whether, even if police were initially given respect due to their position, she would be able to follow the law, to which she answered "yes."

The State then asked who agreed with these statements, and V.M. One, among others, raised his hand. When asked about his agreement, V.M. One said,

> I think we all — most of us, at least me, view people in the police and law enforcement as . . . more well trained on the law and more understanding of the law than maybe the person walking across the street from you. But then when you hear them . . . you just have to weigh what they say as well put and then balance it against the other evidence that's been presented. . . . They make mistakes, too.

Williams objected to V.M. One on the basis that he would assume that police "are more well-trained on the law than someone else, but then you can hear what they say and judge. So he's agreeing he is going to start them higher, give them kind of this automatic credibility, but it's possible for them to lose it." The trial court declined to strike V.M. One for cause, stating that his remarks were directed toward officers' legal training being better than most people's but not specifically toward their credibility.

We agree. V.M. One's statements as a whole reflect that he was persuadable, was open to questioning police testimony, and did not hold an absolute view on police officers' credibility. *See Feldman*, 71 S.W.3d at 747 (finding trial court did not abuse its discretion when it did not strike a juror who said he would "lean towards" believing an officer over a lay witness but would delay judgment until after hearing both witnesses).

Further, before a venireperson can be excused for cause on the basis of bias, the law must be explained to him, and he must be asked whether he can follow that law regardless of his personal views. *Tracy v. State*, 597 S.W.3d 502, 512 (Tex. Crim. App. 2020). The party challenging a venireperson bears the burden to establish that the challenge is proper, and he does not meet this burden until he has shown that the venireperson understood the requirements of the law and could not overcome his prejudice well enough to follow the law. *Id.*

Williams failed to make such a showing. No one questioned V.M. One further on whether he could follow the law despite thinking that police officers have better legal training than civilians. He specifically stated he would weigh officer training against the rest of the evidence.

Because the statements made by V.M. One do not constitute an extreme or absolute position or otherwise demonstrate improper bias and because Williams failed to carry his burden to demonstrate bias, we hold that the trial court's denial of his

challenge for cause was not an abuse of discretion.  *See id.*; *Feldman*, 71 S.W.3d at 747.

We overrule this point.

## IV. CONCLUSION

Having overruled both of Williams's points, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 7, 2024