

# NUMBER 13-24-00024-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

REYES SALAZAR,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

## ON APPEAL FROM THE 206TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

# OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Opinion by Justice West**

This case involves the "mix-up" of two alternate jurors with two regular jurors. By his first two issues, appellant Reyes Salazar argues that the alternate jurors' participation in jury deliberations and verdict violated his constitutional right to a twelve-person jury and constituted an "outside influence" violating Article 36.22 of the Texas Code of

Criminal Procedure. By his third issue, appellant argues that the trial court erred when it denied his motion for a new trial and his request to present evidence of juror misconduct.

We agree that the mix-up of the jurors violated Article 36.22. However, appellant fails to show how such procedural error affected his substantial rights because there is nothing in the record to suggest outside information was introduced to the jury and affected the verdict. We also find that the trial court did not err when it denied appellant's motion for new trial because the evidence appellant sought to introduce is barred by Texas Rule of Evidence 606(b). We affirm.

## I.     BACKGROUND

Appellant was indicted for continuous child sexual abuse and three counts of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. §§ 21.02(b), 22.021(a)(1)(B). Appellant's case went to trial in December 2023. Twelve sitting jurors and two alternate jurors were selected from the venire, but the jurors were not informed which of them were alternates. A different district court judge proceeded over the rest of the trial.

The jury retired to deliberate on the third day of trial. At that point, the two alternate jurors, P.I. and E.G., were "mixed up" with sitting jurors #1 and #7.[1] Jurors #1 and #7 were mistakenly excused while P.I. and E.G. went with the remaining jurors to deliberate.

Upon discovering the error, the State asked the trial court how "the issue of the other alternates who are a part of the 12" would be handled. The trial court explained to the parties that P.I. and E.G. were going to continue deliberating with the other ten regular

---

[1] Though not required, we will use the jurors' initials or juror numbers to protect their identities.

2

jurors, and jurors #1 and #7 were going to act as alternate jurors and would not participate in deliberations. The following colloquy occurred:

[The State]:   So have [jurors #1 and #7] been admonished that they have not spoken to anyone about this case or anything like that?

[THE COURT]:   Now, these two, the two that are not here.

[The State]:   They're not here anymore.

[THE COURT]:   They left, but they're back.

[The State]:   Are they in the deliberation room, Judge?[2]

[THE COURT]:   Yes. But they are not talking about the case.

[The State]:   But my concern is because they had stepped out, we need to admonish and find out if they had discussions about this case.

[THE COURT]:   Yes, I am going to do that.

The trial court explained that it was going to admonish jurors #1 and #7 from discussing anything they had potentially learned outside the courtroom to the other jurors. Defense counsel responded:

I understand, Judge. . . . Somehow the alternates got into the main pool and now are sitting as jurors. And I believe that that switch just by those mistakes can be very prejudicial to my client, just in the manner that we, you know, picked the jury and the considerations that we take in making our first ten strikes and so I believe that this is an error that could conceivably, of course—I have my client. And so I object to that and I will, of course, again— abide [by] the Court's decision[.]

The State argued in response that when the parties made their strikes, they were "still considering" the alternates, and "everything has been proper." The trial court, implicitly overruling the defense's objection, responded that "all 14 of these jurors were here, heard

---

[2] The record does not indicate when jurors #1 and #7 returned to the deliberations room.

3

all the evidence and—and were charged and all that." The trial court also stated that "the 12 that started deliberating were part of—of the group," and "the 14 were not told by the [prior trial court] judge or anybody else who the alternates were."

P.I. and E.G. rendered a verdict with the ten regular jurors and convicted appellant of continuous child sexual abuse and two of the three counts of aggravated sexual assault of a child. *See id.* §§ 21.02(b), 22.021(a)(1)(B). Appellant's punishment was enhanced due to a prior felony conviction, *see id.* § 12.42(c)(1), and the jury assessed life imprisonment as to each count. The trial court sentenced appellant in accordance with the jury's verdict. This appeal ensued.

## II.    TEXAS CONSTITUTION ARTICLE V, § 13

Appellant argues that his constitutional right to a twelve-person jury, *see* TEX. CONST. art. V, § 13, was violated because the trial court made no determination that the original two jurors were disabled or disqualified before replacing them with the alternate jurors, a statutory requirement. *See* TEX. CODE CRIM. PROC. ANN. art. 33.011(b).[3]

Article 33.011(b) of the Texas Code of Criminal Procedure provides,

> Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment, become or are found to be unable or disqualified to perform their duties or are found by the court on agreement of the parties to have good cause for not performing their duties. Alternate jurors shall be drawn and selected in the same

---

[3] Appellant's trial counsel objected to the "mix-up" of the jurors, but the objection did not relate to a violation of his right to a twelve-person jury. *See* TEX. R. APP. P. 33.1(a). Instead, trial counsel argued that the presence of the alternate jurors in the deliberations room was "prejudicial." Moreover, appellant did not raise a violation of his constitutional right to a twelve-person jury in his motion for new trial. Because the Texas Court of Criminal Appeals has not determined whether this constitutional right "requires an affirmative waiver," we will assume without deciding that appellant has preserved this issue for appellate review. *See Becerra v. State*, 620 S.W.3d 745, 748 (Tex. Crim. App. 2021) (noting that "this Court has not determined whether Article V, [§] 13 creates a right that requires an affirmative waiver under *Marin v. State*"); *see also Taylor v. State*, No. 06-22-00071-CR, 2023 WL 2472641, at *6 (Tex. App.—Texarkana Mar. 13, 2023, pet. ref'd) (mem. op., not designated for publication) (assuming without deciding that appellant's "Article V, [§] 13, complaint does not require preservation").

4

manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, security, and privileges as regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury has rendered a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment.

*Id.* In other words, an alternate juror may replace a regular juror only after the trial court makes a finding that the regular juror is "unable or disqualified to perform their duties," or by agreement of the parties. *See id.*; *see also id.* art. 36.29 (providing the procedural requirements when a juror dies or becomes disabled from sitting, including potential replacement by an alternate juror).

In this case, the two alternate jurors replaced two regular jurors, but the trial court made no finding that the regular jurors were disqualified or unable to perform their duties nor did the parties agree that there was good cause to dismiss the regular jurors. *See id.* art. 33.011. Thus, we hold that the trial court erred by replacing the regular jurors with the alternate jurors without making the requisite finding under Article 33.011. *See id.*; *McCumber v. State*, 714 S.W.3d 159, 166 (Tex. App.—Beaumont 2024, no pet.) (holding that the trial court erred when it permitted two alternate jurors to replace two regular jurors without making a finding that the regular jurors were disqualified or unable to perform their duties). However, for the reasons below, we disagree that such error violated appellant's constitutional right to a twelve-person jury or that he was harmed by the error.

Appellant relies heavily on *Becerra v. State* in his appellate brief, and we find it instructive to our holding in this case. 685 S.W.3d 120 (Tex. Crim. App. 2024). In *Becerra*, an "alternate juror retired to the jury room with the regular jury without any party realizing the issue." *Id.* at 123. Less than an hour later, the parties and the trial court became aware there were thirteen people in the jury room, and "the court immediately had the bailiff

remove the alternate juror." *Id.* The trial court instructed the jury to resume deliberations without the alternate juror being present and to disregard the alternate juror's participation in deliberations. *Id.* at 123–24. The jury then returned a guilty verdict. *Id.* at 124.

Becerra filed a motion for new trial and attached an affidavit from one of the regularly seated jurors. *Id.* The affidavit stated that during deliberations the alternate juror "voted on the verdict of 'guilty' ultimately returned by the jury" before being removed by the bailiff. *Id.* Becerra argued on appeal that the alternate juror's presence and participation in jury deliberations violated "his constitutional right to a jury composed of twelve people under Article V, [§] 13 of the Texas Constitution," and "Articles 31.011, 33.011, and 36.22 of the Code of Criminal Procedure." *Id.* at 125. The court of appeals held that appellant's constitutional right to a twelve-person jury was not violated, and even if his statutory rights were violated, he failed to show harm. *Id.* at 126.

The Court of Criminal Appeals agreed. *Id.* at 133–34. The Court explained that alternate jurors are a creature of statute, not the Constitution. *See id.* at 129–32. The Court found that, even though the alternate juror participated in deliberations and voted on Becerra's guilt, the presence of the alternate juror did not "transform" the juror into a thirteenth juror. *See id.* at 132 ("Looking at the text of the constitutional and statutory provisions, an 'alternate juror' does not alter the composition of the petit jury even if the alternate erroneously participates in jury deliberations."). It found that "only when the alternate juror replaces a member of the jury that the alternate juror can be said to be a member of the regular jury." *Id.*

The Court concluded that the trial court "unquestionably composed the petit jury of twelve people" and held that appellant's constitutional and statutory right to a twelve-

6

person jury was not violated. *Id.* at 133–34; *see McCumber*, 714 S.W.3d at 165 (noting "that in *Becerra*, a total of thirteen people actually participated in deliberations" and "vote[d] on the defendant's guilt or innocence, yet the Court of Criminal Appeals held that Article V, [§] 13 was not violated because the regular jury was always 'composed' of twelve members" (citing *Becerra*, 685 S.W.3d at 134)). The Court further held that Article 33.011 was not violated as there was no dispute "that the selection of the alternate juror was made in accordance with Article 33.011." *Becerra*, 685 S.W.3d at 133–34.

Unlike in *Becerra*, the alternate jurors in this case actually replaced the regular jurors without a finding by the trial court that the regular jurors were disqualified or unable to perform their duties, and we agree with appellant that the trial court erred in doing so. *See id.*; *McCumber*, 714 S.W.3d at 165. However, the *Becerra* Court stated:

> Considering the text and history of the relevant constitutional and statutory provisions as well as the common-law and statutory origins of the twelve-person jury, Article V, [§] 13 of the Texas Constitution and Article 33.01 of the Code of Criminal Procedure address exactly what they appear to address—the size of the jury. Article V, [§] 13 of the Texas Constitution refers to the composition of the jury and uses the word "composed" which refers to the formation of the jury. Article 33.01 is specifically titled "Jury Size." These provisions do not contain references to "alternate jurors," nor do they contain terms that suggest that an alternate juror becomes a member of the jury if he or she participates in a jury's "ultimate verdict." A jury is necessarily composed before it retires to deliberate.

*Id.* at 129–30 (internal footnotes omitted). Given this language, we cannot conclude, as appellant contends, that his right to a twelve-person jury was violated simply because the trial court did not make a finding that jurors #1 and #7 were disabled or disqualified from sitting before being replaced. *See id.*; *McCumber*, 714 S.W.3d at 164–65 (relying on *Becerra* and holding that when two alternate jurors improperly replaced regular jurors

7

such error did not violate appellant's right to a twelve-person jury under Article V, § 13 because "the jury was at all times composed of twelve members").

Nor can we accept appellant's argument that this error is reversible.[4] Here, appellant couches a statutory error as a constitutional error. "When a trial court fails to follow the statutory procedures for replacing a regular juror with an alternate juror, the error is 'not of constitutional dimension.'" *McCumber*, 714 S.W.3d at 167 (quoting *Hill v. State*, 475 S.W.3d 407, 408 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd)) (rejecting appellant's argument that trial court's failure to follow procedure for replacing regular jurors with alternate jurors under Article 33.011 rose to constitutional error). Accordingly, we may reverse only if the error affected his substantial rights. *See* TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

In *McCumber*, a case with substantially similar facts to the case at hand, two of the regular jurors were inadvertently dismissed, and two alternate jurors retired to deliberate with the ten regular jurors. 714 S.W.3d at 163. The error did not come to the trial court's attention until about two hours after the jury started deliberations. *Id.* After discussion between the parties, defense counsel objected to the two alternate jurors being on the panel, and the trial court overruled the objection. *Id.* Defense counsel then moved for a

---

[4] Appellant first argues "that this type of constitutional error is of such an egregious nature that reversal is warranted without the necessity of a harm analysis." However, Texas law is clear that only "certain federal constitutional errors labeled by the United States Supreme Court as 'structural,'" are "categorically immune to a harmless error analysis." *Lake v. State*, 532 S.W.3d 408, 411 (Tex. Crim. App. 2017) (quoting *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997)). "As the standard suggests, only federal constitutional errors can be 'structural,' though most federal constitutional errors are not structural." *Id.* Because the federal constitution does not guarantee the right to a twelve-person jury, the error is not structural. *See id.*; *McClellan v. State*, 143 S.W.3d 395, 400 (Tex. App.—Austin 2004, no pet.) (holding that because the federal constitution does not grant the right to a twelve-person jury, error regarding eleven jurors proceeding to trial was not federal structural error).

8

mistrial, which the trial court denied. *Id.* On appeal, McCumber argued that the mix up of the jurors violated his right to a twelve-person jury and Texas Code of Criminal Procedure Article 33.011(b). *Id.*

The appellate court held that that the error did not violate appellant's right to a twelve-person jury because the panel was at all times composed of twelve people. *Id.* at 164. It went on to hold that while the error violated Article 33.011(b), the error was harmless because "a defendant has no right that any particular individual serve on the jury," and a "defendant's only substantial right is that the jurors who do serve be qualified." *Id.* at 167 (quoting *Jones v. State*, 982 S.W.2d 386, 393 (Tex. Crim. App. 1998)). The court found that "the two alternate jurors were examined and selected in the same way as regular jurors," and "[t]hroughout the trial the alternate jurors were indistinguishable from the regular jurors." *Id.* at 167–68 (citing *U.S. v. Olano*, 507 U.S. 725, 740 (1993)). It also found that there was no evidence of "any taint from the two jurors who began the trial as alternate jurors and finished the trial as regular jurors," and therefore, "McCumber's substantial rights were not affected" and the error was harmless. *Id.* at 168.

Here, appellant does not argue that the alternate jurors were unqualified to be regular jurors or selected in an improper manner. *See* TEX. CODE CRIM. PROC. ANN. art. 33.011(b) (stating that alternate jurors "shall have the same qualifications, . . . and shall have the same functions, powers, facilities, security, and privileges as regular jurors"); *McCumber*, 714 S.W.3d at 167; *see also Jones*, 982 S.W.2d at 393. Indeed, the record indicates that P.I. and E.G. were "drawn and selected," had "the same qualifications," were "subject to the same examination and challenges," took "the same oath," and had "the same functions, powers, facilities, security, and privileges as" the regular jurors. *See*

9

TEX. CODE CRIM. PROC. ANN. art. 33.011(b). Moreover, the jurors themselves did not know who was selected as a regular or an alternate juror, and the jurors were treated the same throughout trial. *See McCumber*, 714 S.W.3d at 167 (concluding that "[t]he record does not indicate any taint from the two jurors who began the trial as alternate jurors and finished the trial as regular jurors," in part because "[t]hroughout the trial the alternate jurors were indistinguishable from the regular jurors").

In this case, the alternate jurors replaced the regular jurors, and the jury was at all times composed of twelve members.[5] Therefore, appellant's constitutional right to a twelve-person jury was not violated. *See Becerra*, 685 S.W.3d at 133–34; *McCumber*, 714 S.W.3d at 164–65. While the "mix up" of the jurors violated Article 33.011, appellant was not harmed by the error because the record indicates that the alternate jurors were qualified and treated the same as regular jurors. *See McCumber*, 714 S.W.3d at 167–68; *see also Jones*, 982 S.W.2d at 393. Accordingly, we overrule appellant's first issue.

### III.     TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 36.22

By his second issue, appellant argues that the alternate jurors who participated in deliberations—and the return of jurors #1 and #7 to the deliberation room—were outside influences and violated Article 36.22 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.22. He then argues that he suffered harm as a result of these errors because they had a substantial or injurious effect on the jury's verdict. *See* TEX. R. APP. P. 44.2(b).

---

[5] Appellant does not argue that jurors #1 and #7's eventual return to the deliberations room violated his right to a twelve-person jury, and therefore, we do not address it in our analysis.

10

Article 36.22 states: "No person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. art. 36.22. "Article 36.22 has two prohibitions, the first disallows any person from being with a jury while it is deliberating and the second prohibits any person from conversing with a juror about the case on trial except in the presence and by permission of the court." *Becerra*, 685 S.W.3d at 134. While the Court in *Becerra* held that the alternate juror's presence and participation in jury deliberations did not violate Becerra's right to a twelve-person jury, the error did, however, violate both provisions of Article 36.22. *Id.* at 135–36. It held that the alternate juror's mere presence in the deliberations room "violates the first provision of Article 36.22," and the alternate juror's subsequent participation in deliberations violated the second provision of Article 36.22. *Id.*

Appellant contends that the presence of the two alternates and two regular jurors in deliberations constituted four outside influences under Article 36.22. We will assume without deciding that the participation of the alternate jurors in deliberations and the return of regular jurors #1 and #7 to the deliberation room were outside influences and violated Article 36.22. Thus, we turn to whether the errors affected appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Becerra*, 685 S.W.3d at 141 (holding "that the appropriate standard for evaluating harm when an alternate juror participates in jury deliberations in violation of Article 36.22 is the standard for non-constitutional error found in Rule 44.2(b)").

"An error affects substantial rights only if it has a substantial or injurious effect in determining the jury's verdict." *Becerra*, 685 S.W.3d at 144. If, after examining the record,

a court has "fair assurance that the error did not influence the jury, or had but a slight effect, a reviewing court should not overturn the conviction." *Id.* It is the appellate court's duty to assess harm after reviewing the record, and neither party has the burden to demonstrate whether the appellant was harmed. *Id.* at 139.

Appellant argues that he was harmed because jurors #1 and #7 were not admonished before returning to the deliberation room, and "[i]f a verdict was reached shortly after" jurors #1 and #7 returned to the deliberation room, "the record would clearly demonstrate a substantial and injurious influence in determining the jury's verdict." However, defense counsel never requested a limiting instruction. In fact, it was the State that requested that the jurors be admonished once the error became apparent to the parties, and appellant points to nothing in the record indicating that the jurors disobeyed the instruction. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (noting that "we generally presume that a jury will follow the judge's instructions"); *see also Becerra v. State*, No. 10-17-00143-CR, 2025 WL 415460, at *3 (Tex. App.—Waco Feb. 6, 2025, pet. ref'd) (mem. op., not designated for publication) (holding on remand that the alternate juror's presence and participation in the jury deliberations was not harmful because the trial court admonished the jurors from considering the alternate jury's input in deliberations, and there was "nothing to suggest that the jury did not follow the trial court's instruction"); *Hernandez v. State*, No. 11-21-00290-CR, 2024 WL 4374993, at *3 (Tex. App.—Eastland Oct. 3, 2024, no pet.) (mem. op., not designated for publication) (holding any alleged error under 36.22 was harmless because there was no evidence that the jury did not follow the trial court's instructions).

Further, "[t]he main purpose of Article 36.22 'is to prevent *an outsider* from saying anything that might influence a juror.'" *Ocon v. State*, 284 S.W.3d 880, 887 (Tex. Crim. App. 2009) (quoting *Chambliss v. State,* 647 S.W.2d 257, 266 (Tex. Crim. App. 1983)). Above, we recognized that the alternate jurors were selected and treated the same as regular jurors. The record does not show that the alternate jurors were exposed to outside information. There is also no indication that regular jurors #1 and #7 introduced outside information to the rest of the jurors when they returned to the courtroom. In sum, there is simply no evidence that once the jurors went into deliberations, any kind of outside information influenced their verdict. *See Becerra*, 685 S.W.3d at 136; *see also Becerra*, 2025 WL 415460, at *3. Accordingly, we overrule appellant's second issue.

## IV.    MOTION FOR NEW TRIAL

By his last issue, appellant argues that the trial court erred when it denied appellate counsel's request to present evidence of juror misconduct, and, therefore, abused its discretion when it denied his motion for new trial.

## A.    Background

After deliberations began, the court received a jury note which stated: "We have a juror that because of a past incidence of sexual assault states that she doesn't believe any of it has a strong bias [sic]." The State asked that the juror be questioned and defense counsel objected. The trial court overruled the defense's objection. The juror, M.C., was then questioned by the State. The State read the jury note to M.C. and asked her what the note was about, and she replied:

> Oh, it's not—it wasn't like that. I never mentioned that. I just said that . . . I heard of other cases, but I never said I was biased to anything. So I don't know why they—they worded it like that. I never said that—that I was going to be biased of anything. I . . . never mentioned that.

13

The State asked M.C. if she can "still render fair and impartial verdicts" with "no bias or prejudice" despite her knowledge of these other cases. M.C. replied, "Yes. And I—and I mentioned that to [the other jurors]." Defense counsel stated that she did not have any questions. The trial court then asked M.C. if she was "open-minded" and able to base her "decisions strictly on the evidence in this case." M.C. replied, "Yes, I can." The trial court then excused M.C., and she returned to the jury room.

Appellant's appellate counsel filed a motion for new trial alleging that "the jury engaged in such misconduct that the [d]efendant did not receive a fair and impartial trial." In support of his motion, he stated that, "after retiring to deliberate, a juror was called back into the courtroom after concerns were raised about the juror's opinions and/or beliefs. Said juror was improperly questioned and was subsequently improperly influenced as to arouse the sympathy or excite the passions of said juror."

At the hearing on the motion, appellate counsel argued that "based on some issues that happened during deliberations with one of the jurors," he wanted to bring M.C. to the stand to testify "as to what happened during the deliberations." The State objected, arguing that, per Texas Rule of Evidence 606, "[t]he only things that can be discussed or questioned of a juror is outside influence and whether the juror was wholly disqualified." The trial court asked appellate counsel if he intended to bring M.C. forward to establish the "outside influence" exception, to which he responded:

> [I] believe that the testimony would show is that during the deliberations, [M.C.] was brought into the courtroom based off of some juror note. She was then questioned by the Hidalgo County District Attorney's Office. She was questioned by the Court. I believe the only person that did not question her was her—that was [t]rial [c]ounsel at that time. . . . [A]s far as outside influence, I think there's a question as to whether or not being questioned by the DA's office constitutes an outside influence and whether or not the

14

Court is considered—court personnel, which is allowed under the Rule. And, that is considered an outside influence.

The State argued generally that M.C. was questioned to "determine whether she was emotionally available to continue her deliberation," and such questioning did not constitute an outside influence under Rule 606(b). Appellate counsel stated that he "would defer to the Court" and "would just like to make an offer of proof." He later conceded that he did not have authority to support his argument. The trial court asked appellate counsel what M.C. was going to testify about. Appellate counsel stated,

> I anticipate that she will come in here and testify that at the beginning of deliberations, she was the only hold out. She was the only person that was wanting to render a verdict of not guilty. After—I guess there was some sort of recess—after coming to the courtroom and returning . . . she was still a not guilty verdict until she was pressured by all the other jurors to change her verdict from not guilty to guilty. But for the juror note that came from someone who was not the foreperson . . . she was pressured and bullied into changing her verdict from not guilty to guilty.

The State argued that these statements still did not fall under the outside influence exception. The trial court concluded that appellate counsel's statement about what M.C. intended to testify about was an adequate offer of proof, and it was unnecessary for M.C. to testify on the record. The trial denied appellant's motion for new trial.

## B.    Analysis

Appellant argues that the trial court erred when it denied appellate counsel's request to present M.C.'s testimony in an offer of proof, and the trial court subsequently erred in denying his motion for new trial. He contends that "[t]he issue of outside influence was raised during [the] hearing" on his motion for new trial, and "[g]iven the knowledge of the trial court and the State of Texas concerning the improprieties of two alternate jurors

15

taking part in deliberations, this alone should have been sufficient to allow appellate counsel to proceed with evidence under the exception to Rule 606(b)."

Texas Rule of Evidence 606 provides that, during an inquiry into the validity of a verdict or indictment, "a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." TEX. R. EVID. 606(b)(1). "The court may not receive a juror's affidavit or evidence of a juror's statement on these matters." *Id.* The rule excepts testimony by a juror "about whether an outside influence was improperly brought to bear on any juror," or "to rebut a claim that the juror was not qualified to serve." *Id.* R. 606(b)(2)(A)–(B).

An "outside influence" under Rule 606(b)(2)(A) "is something originating from a source outside of the jury room and other than from the jurors themselves." *Anderson v. State*, 665 S.W.3d 743, 758 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (citing *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012)); *see Colyer v. State*, 428 S.W.3d 117, 124–25 (Tex. Crim. App. 2014). The purpose of this exception "is to allow proof of external pressures that are likely to affect the verdict." *Anderson*, 665 S.W.3d at 758 (citing *Colyer*, 428 S.W.3d at 118). "To allow jurors to feel free to raise and discuss differing viewpoints without the fear of public opinion or scrutiny, the trial court may not inquire into the subjective thought processes of the jury during deliberations." *Id.* (citing *McQuarrie*, 380 S.W.3d at 153).

We first note that appellant never stated that M.C. was going to testify about an outside influence from the alternate jurors and only implicitly argues so on appeal. For example, while he states the issue of "outside influence was raised" at the hearing on the

motion for new trial, he specifically argued at the hearing that the "outside influence" was the trial court and the State's questions to M.C. about the jury note. In fact, the trial court asked appellant multiple times to clarify what "outside influence" M.C. was going to testify about, and he maintained that it was the questioning by the court and the State about the jury note. He argued separately that M.C. was "bullied" or "coerced" into changing her verdict but conceded, as he does on appeal, that her testimony in this regard does not fall under either of the exceptions under Rule 606(b)(2). In his appellate brief, he asks this Court to "reconsider Rule 606(b) and its blanket application to all conduct occurring in the deliberation room" and urges us "to carve out an exception wherein a juror may be allowed to testify and impeach their own verdict."

Even if we construe appellant's argument to mean that M.C. was "bullied" or "coerced" by the alternate jurors into changing her vote, we find that these statements still do not constitute an "outside influence" under Rule 606(b). Under Rule 606(b), an outside influence is something that originated outside of the jury. *See id.* Nothing that appellant alleges happened in the deliberation rooms indicates that the alternate jurors or the regular jurors introduced outside information to the rest of the jurors.

We hold that even if the trial court erred by preventing M.C. from testifying, appellant was not harmed because her testimony would be barred by Rule 606. *See* TEX. R. EVID. 606(b); *Anderson*, 665 S.W.3d at 760 (holding that, even if the trial court erred by not allowing appellant's counsel "to make offers of proof by calling the jurors themselves to testify," appellant failed to show harm because "the testimony regarding the jury's deliberations and processes concerning the verdict is barred by Rule 606"). We

also reject appellant's request that we reconsider the applicability of Rule 606(b). We overrule appellant's third issue.

## V. CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
11th day of December, 2025.